### SALLY PECK vs. JOHN E. HOYT AND ANOTHER.

The petitioner, a childless widow advanced in years, of a susceptible and confiding temperament, and having no near relatives with whom she was on friendly terms, in consideration of the love and affection which she bore to the respondent, who resided in her house, and whom she regarded and treated as a son, and in the expectation and belief that he would reciprocate her feelings, would always live with her and treat her as a mother, and support her during her life, being justified in such belief by the respondent's treatment of her, which was designed by him to create such belief, conveyed to the respondent by deeds certain land which formed a considerable part of her estate. The respondent afterward, being requested by the petitioner to give her a written guaranty that he would support her during life, refused to do so, and so conducted toward her that it became impossible for her to reside comfortably in the same house with him, and she was obliged to remove and reside elsewhere, having during all the time she resided with the respondent provided for her own support.

VOL. XXXIX.—2

In a bill in equity to set aside the deeds, it was held that the conduct of the parties toward each other was such as, in effect, to make a contract that the respondent should support the petitioner during her life, and assume toward her the duties and responsibilities of a son, for which the property conveyed to him was to be his compensation; and that, the respondent having failed to perform the contract, the deeds should be set aside, and the title restored to the petitioner.

BILL IN EQUITY to set aside deeds of land alleged to have been obtained by fraud; brought to the Superior Court, and referred to a committee who found the following facts:

In 1855 the petitioner leased a portion of the premises described in the petition, together with a part of her dwelling-house on the same, in which she then resided, to the respondent, Darius Hoyt, who immediately thereafter entered into the possession of the same with his family, consisting of his wife and only child, the respondent, John E. Hoyt, then about twenty years of age, and they have continued as one family to occupy the premises from that time to the present, John being then and still unmarried.    At the time Darius and his family took possession of the premises so leased they had no visible property, and were reputed to be poor.    The petitioner was then the owner of the land described in the petition, and of other land in right of dower, of the value of from two thousand to twenty-five hundred dollars, and had personal estate, chiefly in money, to the amount of about four thousand dollars.    She was then about sixty-seven years of age, a widow left childless by the death of an only daughter, of a susceptible and confiding temperament, with no immediate relatives with whom she was on friendly terms, and having a strong desire to secure the good will and affection of some person or persons upon whose care and protection she could depend in her declining years.    Under the kind attentions of the Hoyt family she soon became much attached to them, and particularly to John, and so strong did her affectionate regard for him become, that in the course of a year or two after they came to live in her house she made her will, in which she gave to him about one-half of her estate, making him therein a co-devisee with Dr. Levi Wilcoxson, of New Haven, to whom her daughter was

Peck *v.* Hoyt.

engaged to be married at the time of her death, and to whom she was strongly attached, and was·pledged to remember in her will by the dying request of her daughter.

About this time she commenced making donations in money to John E. Hoyt, and continued the same from time to time until some time in the year 1867, in sums of from $10 to $500, amounting in all to a sum exceeding two thousand dollars, most of which was given to him after 1860. She also, during all the time from 1855 to 1868, entertained entire confidence in the friendship and good faith of Mr. and Mrs. Darius Hoyt, and manifested an interest in their welfare by releasing them from time to time from the payment of portions of their rent, and also by rendering them occasionally her personal services in sewing, knitting, making butter and cheese and other work about the house. She often expressed her feelings toward John to him and others, to the effect that she regarded him as her son; that she wanted some one to take care of her, and should like to have them live there always and be united with them ; and from the conduct and treatment she received from all the members of the Hoyt family, she had reason to believe that her confidence and friendship for them were reciprocated, and that her wishes would be regarded.

On the 30th of October, 1863, the petitioner executed and delivered to John E. Hoyt a deed embracing a portion of the land described in the petition, then of the value of twelve hundred dollars. The consideration of this deed was the love and affection which the petitioner entertained for John E. Hoyt, and the expectation and belief that he would reciprocate her feelings, would always live with her, extend his care and protection to her as a child should do to his mother, and would furnish her with such necessary support as she might require during her life, and although no express agreement was made between the parties to that effect, yet his conduct toward her and his treatment of her justified the opinion and belief she thus entertained, and were designed by him to create such opinion and belief.

On the 18th of January following, she executed and delivered to John E. Hoyt another deed embracing a portion of the

land described in the petition, then of the value of five hundred dollars. On this conveyance John E. Hoyt transferred to the credit of the petitioner on the books of the savings bank at Newtown the sum of two hundred dollars, the balance of the consideration for the valuation of the land being the same as that for the above mentioned deed, and this deed was so far received under the same circumstances.

On the 3d of September following, the petitioner executed and delivered to John E. Hoyt another deed embracing a portion of the land described in the petition, then of the value of five hundred dollars. The deed was given and received upon the same consideration as the first mentioned deed.

John claimed and testified that all of the land described in the deeds was purchased by him of Mrs. Peck, and that he paid her therefor in cash, at or about the time of the delivery of the deeds, the consideration therein expressed, and Darius and Mrs. Hoyt testified that the parcels of land were purchased by John of Mrs. Peck, though they were unacquainted with the amount of consideration of the first and third deeds, or how the same was paid.

The petitioner's affection for John, and confidence in him and the Hoyt family, remained unabated until about the month of April, 1868, when she began to suspect John's integrity, and became dissatisfied with his conduct and treatment of her, and particularly with the fact that he had deposited in the Bridgeport savings bank, in his own name and to his own credit, the sum of four hundred dollars which she had delivered to him to be deposited in her name and to her credit. She made repeated complaints to John of his conduct in this respect, and insisted that he should return the money to her, which at one time he promised to do, but afterward refused to do, claiming that she had made him a present of it. About this time she also demanded of him that he should give her some guaranty in writing that he would furnish her with necesssary support during life. After much negotiation this also was refused.

Thus having lost all confidence in his friendship and integrity, and a state of bitter animosity existing, with no reason-

able prospect of reconciliation between the parties, it was no longer possible for the petitioner to live comfortably and pleasantly in the same house with the respondents, and in the fall of 1868 she left her dwelling-house and went to reside elsewhere.·

The remaining estate of the petitioner, undisposed of except as aforesaid, consists of her interest in the estate reserved in the deed of September 3d, 1864, above referred to, the value of which in fee is about seven hundred and twenty-five dollars, of about sixty acres of land held in right of dower by her, of the yearly value of from forty-five to fifty dollars, and about twenty-two hundred dollars in personal estate, mostly in money.

From 1855 to 1868 the petitioner occupied a portion of her dwelling-house separate from that occupied by the Hoyt family, and provided at her own cost the necessaries of life, without calling on John E. Hoyt to furnish her any, except as is above mentioned.

The Superior Court accepted the report of the committee, and reserved the question what decree should be passed for the advice of this court.

*Seeley*, for the petitioner.

*Sanford*, for the respondents.

FOSTER, J. Many of the allegations in this bill are not reported proved by the committee; but looking at the whole case we think abundant facts are found to entitle the petitioner to relief. Her circumstances were somewhat peculiar. She was a widow, not aged, but so far advanced that every additional year perceptibly increased the burden of life. Her only child, a daughter, was removed by death just as she was about to form a matrimonial connection, leaving her no immediate relatives with whom she was on friendly terms. The report states that she was of a susceptible and confiding temperament, and that she had a strong desire to secure the good will and affections of some person or persons upon whose

care and protection she could depend in her declining years. She had property, real and per onal, amounting to some $10,-000, more or less. In 1855 sl e leased a part of her real estate, including a po. ion of her dwelling-house, to Darius Hoyt, one of the respondents, and he with his family, consisting only of his wife and his son John, the other respondent, has occupied the same from that time to the present. By their kind attentions to her she soon became strongly attached to them, and particularly to the respondent, John, whom she treated and recognized as a son. Within a year or two after they came to live in her house she made her will, giving him about half of her property. She also made donations to him in money from time to time up to 1867, to an amount exceeding the sum of $2,000. Her regard for the other respondent, Darius, was manifested by releasing him from time to time from portions of his rent, and by rendering the aid of her personal services in the domestic duties and labors of his family.

It was under these circumstances that the three deeds which are described in the bill were given to the respondent John by the petitioner, which deeds she now seeks to have set aside, that the title to the land conveyed by them may be restored to her. We think this ought to be done.

No contract, either written or oral, appears to have been made, under which any obligations were assumed, or any duties imposed, as the consideration for these conveyances. The conduct of these parties, the petitioner and respondent John, toward each other has, however, been such as, in effect, to make a contract that the respondent John should furnish her with such necessary support as she might require during her life, should take on himself the duties of a son, should exercise the care, show the kindness and assume the responsibilities of that relation. The property was to be his compensation. After getting a large portion of it he utterly fails to perform any of the duties, the expectation of which performance moved the plaintiff to make these conveyances. He refuses to sign any stipulation which shall impose on him any liability. The petitioner provided for her own wants

Peck *v.* Hoyt.

without calling on him, up to the fall of 1868, when she left her dwelling-house to reside elsewhere; it being impossible for her to remain any longer, comfortably and pleasantly, in the same house with the respondents.

It appears that the respondent John, when one of the deeds in question was delivered to him by the petitioner, transferred to her credit on the books of the savings bank at Newtown the sum of $200. He claimed that he purchased of the petitioner all the lands conveyed to him by her, and that he paid in cash therefor the amounts specified as the consideration in said deeds respectively. Though this claim was supported by his own oath, and partially by the testimony of the other respondent and his wife, the committee find that this sum of $200 was the only amount ever paid on any of these deeds. The attempt thus to palm off a falsehood by way of defence casts a dark shade over the character of these respondents, and deserves the reprobation of the court.

We think it contrary to equity and good conscience, under all these circumstances, that these deeds should be allowed to remain in force. They should be annulled and set aside, and the title to the land conveyed by them should be restored to the petitioner. She should be allowed to amend her bill, if deemed necessary, so as to make the allegations correspond with the finding. She should repay to the respondent John the $200 which she has received, and judgment should be rendered in her favor against him; and as to the respondent Darius, the bill should be dismissed without costs.

We advise the Superior Court to pass a decree in conformity with these views.

In this opinion the other judges concurred.