## Humbles, et al v. Harris

(Decided January 23, 1913.)

### Appeal from Fayette Circuit Court.

Conveyances—Conveyance in Consideration of Care and Attention—When Grantor Entitled to Cancellation of.—Where a party conveys land to another in consideration of the agreement of the other to support and take care of the grantor, and the grantee fails to perform his part of the contract, the grantor may have a cancellation of the conveyance.

J. ALEXANDER CHILES, for appellants.

J. T. FARMER, for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On March 10, 1910, the appellee, Lucy Harris, an old colored woman living in Lexington, being the owner of a house and lot in the city, conveyed it to her niece, Charity G. Humbles and her husband, William T. Humbles, in consideration of the vendees agreeing "to come and live with first party, to care for and attend to and furnish first party fuel and food and medicine while she was sick, and to care for first party in a kind, considerate manner, as they have already in part rendered comfort, etc., to first party, and in further consideration of second parties' paying half of my funeral expenses at my death."

In July, 1911, the appellee, Lucy Harris, brought this suit against the Humbles for a cancellation of the deed upon the ground that they had failed and refused to perform the consideration expressed in the deed. For answer to this suit the Humbles denied that they had failed to perform their part of the contract, but admitted that they moved from the house conveyed to them, in which Lucy Harris also lived, in March, 1911, averring that they were obliged to do so by the conduct of Lucy

Harris. They made their answer a counterclaim against her and asked that, if the deed be cancelled, they be given judgment against her for $317, the reasonable value of the services and attention they rendered to her while she permitted them to perform the contract, and the value of improvements they made on the property during that time.

With the issues substantially in this condition, the case was prepared for trial, and the lower court rendered a judgment cancelling the deed upon the payment of $20 by Lucy Harris to the Humbles. The judgment also directed that each party should pay their own costs. From this judgment the Humbles prosecute this appeal.

It appears from the evidence that, at the time the conveyance was made, Lucy Harris, who was an old woman, living by herself in the house she conveyed, was in a feeble and practically helpless condition, and needed the attention and care of some person. While she was in this condition, J. Alexander Chiles, the attorney for appellee, who was a friend of Lucy Harris, called at her request, to see her, and after they had discussed the necessity of having somebody come and live with her, Chiles, at her instance, went to see the Humbles, and after a conference with them, they agreed to live with her and give her such care and attention as she needed, and as a result the deed in controversy was executed.

At this point we deem it proper to say that although Lucy Harris, through her counsel, has filed a pleading asserting that the conveyance was obtained by fraud and over-reaching, the evidence does not sustain the charge. On the contrary, it is shown that Mr. Chiles throughout the entire arrangement acted with the utmost good faith, and in assisting in the negotiations that resulted in the conveyance believed that he was doing what was best for the interest of Lucy Harris. There is no foundation whatever for the charge that he took the slightest advantage of her condition to procure the conveyance or in any other respect did anything that a conscientious friend would not have done. Although the lower court cancelled the deed we are sure it was not because there was evidence of fraud in its procurement, but on the ground that the Humbles had failed to perform the consideration that induced Lucy Harris to make the deed.

At the time the deed was made the Humbles moved

to the house of Lucy Harris to live with her, and doubtless then intended in good faith to carry out their part of the contract; as Lucy Harris at that time was "sick and helpless, and not expected to live very long." But when she recovered in some measure her health and gave evidence of living many years, they probably reached the conclusion that the bargain was not as advantageous as they thought it would be; and as time passed they were not so faithful in observing the conditions of their contract as they were in the beginning.

The evidence also shows that when Lucy Harris recovered her health she became disagreeable, hard to please and difficult to get along with, and the Humbles also became less attentive and kind to her, and in the course of a few months after the deed was made they ceased to give her the care and attention contemplated by the conveyance.

After this condition had existed for a few months, an unsuccessful effort was made by Chiles, as a friend of both the parties, to adjust the differences between them, and when it became apparent that a satisfactory settlement could not be made, this suit was brought. The evidence as to the character of service rendered by the Humbles to Lucy and the length of time it continued is quite conflicting.

Lucy testifies, and is corroborated by other witnesses, that for the first four or five months after they moved into her house they were kind and attentive to her and complied with their contract, but after that, and until they left her house in April, or March, 1911, they gave to her little if any care or attention. The evidence in her behalf also tends to show that Charity Humbles, who quit working out when she first went to live with Lucy obtained, some time in the summer or fall of 1910, employment as a servant, and this service engaged most of her time.

On the other hand the evidence for the Humbles tends to show that they exercised every reasonable and practicable effort to fully perform their part of the contract during the entire year that they lived in the house with Lucy, and that they only moved away from the house because she became so disagreeable that they could not longer continue to live with her. There is evidence also conducing to show that they lived in the house owned by Lucy about a year, and that the reasonable rent of the

premises during this time was substantially equal in value to the service they rendered.

We have carefully read the record, and, upon a consideration of the whole case, have reached the conclusion that the judgment of the lower court is supported by the evidence, and it is therefore affirmed.