Anderson v. Reed, 20 N. M. 202.

[No. 1634, March 30, 1915.]
# ANDERSON et al v. REED.
[Rehearing Denied May 15, 1915.]

## SYLLABUS BY THE COURT.

1. Where a finding made by a trial court is based upon conflicting evidence, and is supported by substantial evidence, it will not be disturbed by the appellate court.

P. 212

2. Fraud is properly made out by marshaling the circumstances surrounding the transaction and deducing therefrom the fraudulent purpose where it manifestly appears. Circumstantial proof in most cases of fraud can alone bring the fraud to light, for fraud is peculiarly a wrong of secrecy and circumvention, and is to be traced, not in the open proclamation of the wrongdoer's purpose, but by the indications of covered tracks and studious concealments.

P. 213

3. Contracts by a grantee to furnish a home for and support to a grantor, when such contract constitutes the consideration for a conveyance by the grantor of the whole or major portion of his property, are in a class by themselves, and are not governed by the ordinary rules which apply in the construction of contracts. And a contract for companionship, care,, and nursing, in consideration of which a deed to all of grantor's real estate is made to grantee, is in the same class and governed by the same legal principles applicable to contracts for a home and support.        P. 214

4. Cancellation affords the only adequate relief, in a case where an aged and infirm man conveys all his real estate to another in consideration of an agreement by such party to live with, care for, and nurse him as long as he shall live, where such transaction is entered into by him because of his belief that the grantee returns the love and esteem which he holds for the grantee, and because of such supposed affection he contracts for such care and attention.        P. 214

5. The necessity of avoiding such contracts, in cases where there is an intentional and inexcusable failure to perform by the grantees, in order to do justice, is so paramount. and cancellation being the only adequate and complete remedy in such a case, the court will give the remedy upon any reasonable theory. **Held,** that where a complaint in such a case proceeds upon the theory of fraud in the inception of the contract, and the facts show that the grantee never intended to perform the contract, the court properly decreed cancellation.                                                  P. 216

6. An action for fraud and deceit survives in this state. under section 3087, Comp. Laws 1897.

P. 217

Appeal from District Court, Quay County; Leib, Judge.

Action by Lucy M. Anderson and another against Mary E. Reed. From judgment for plaintiffs, defendant appeals. Affirmed.

HARRY H. McELROY and HENRY SWAN of Tucumcari, for appellant.

This action does not survive.
Sec. 3087, C. L. 1897.

As to what is fraud in the inducement.
Page on Contracts, secs, 87, 95; 20 Cyc. 20 and cases cited; Ellis v. Newbrough, 27 Pac. 490.

As to what is fraud and fraudulent representation.
Estes v. Desnoyers Shoe Co., 155 Mo. 577; Dillards v. Moore, 7 Ark. 166; Buena Vista Co. v. Billmyer, 48 W. V. 382; Hartsville Univ. v. Hamilton, 34 Ind. 506; J. H. Clark & Co. v. Rice, 127 Wis. 451; Dawe v. Morris, 149 Mass. 191; Burton v. Platter, 53 Fed. 901; Farmington v. Bullard, 40 Barb. 512; Sawyer v. Pickett, 19 Wall. 160; Forsythe v. Vehmer, 117 U. S. 177; Finlayson v. Finlayson, 121 Pac. 59.

Representations promissory in character and relating merely to what should be in the future are not actionable.

McConnell v. Pierce, 116 Ill. App. 103; Lovelace v. McElroy, 118 Ill. App. 412; Weigand v. Cannon, 118 Ill. App. 635; Creighton v. Carlisle, 21 Ind. App. 438; Robinson v. Rinehart, 137 Ind. 674; Terry v. Charter Oak, 3 Mo. App. 595; Hackett v. Equitable Life, 63 N. Y. S. 847; Milwaukee B. & C. Co. v. Schoknecht, 108 Wis. 457.

REED HOLLOMAN of Santa Fe, C. C. DAVIDSON on Tucumcari and TATUM & TATUM of Dalhart, Texas, for appellee.

The action survives.
Sec. 3038, C. L. 1897.

The courts generally grant relief in cases such as that at bar.

Day v. Lown, 51 Ohio 364, 1 N. W. 786; Boswell v. Patrick, 92 Ga. 417, 17 S. E. 633; Beckett v. Keyston, 49 N. J. E. 510, 23 Atl. 1014; Kyle v. Perdue, 95 Ala. 579, 10 So. 103; White v. White, 89 Ill. 460; Cruise v. Christopher, Adm., 35 Ky. (5 Dana) 181; Scott's Heirs v. Scott, 42 Ky. (3 B. M.) 2; Wall v. Hickey, 112 Mass. 171; Ritter v. Ritter, 42 Mich. 108, 3 N. W. 284; Dickerson v. Dickerson, 24 Neb. 530, 8 Am. St. R. 213; Thomas v. Record, 47 Me. 500; 74 Amer. Dec. 500; Lockwood v. Lockwood, 83 N. W. (Mich.) 613; Lambert v. Lambert, et al., 66 W. V. 520, 19 A. & E. cases, 537; Bogie v. Bogie, 41 Wis. 209; Bresnaham v. Bresnaham, 46 Wis. 385; Paterson v. Paterson, 47 N. W. (Iowa) 768; Kusch v. Kusch, 143 Ill. 353, 32 N. E. 267; McClelland v. McClelland, 176 Ill. 83, 51 N. E. 559; Bevins v. Keen, 64 S. W. (Ky.) 428; Glocke v. Glocke, 89 N. W. 118; Pironi v. Corrigan, 20 Atl. (N. J.) 218; Lach v. Leach, 58 Am. Dec. 642, 4 Ind. 628; Lowman v. Crawford, 40 S. E. (W. V.) 17; Wilfong v. Johnson, 23 S. E. (W. V.) 730.

In granting relief in such cases many different theories are presented by the courts. The impelling force which has caused courts to grant the relief, whether founded on one theory or the other, is that such transactions do not appeal to the conscience of the chancellor, and there is no adequate remedy at law.

## STATEMENT OF FACTS.

The appellees are the legatees under the last will and testament of Joseph Z. Reed, to whom he devised all of his property, both real and personal. The will was executed a few days before his death, which occurred in January or February, 1911, and was duly probated. The appellant was married to Joseph Z. Reed, in 1889, and lived with him as his wife for about 10 years, when she left him, whereupon he procured a divorce. In the year 1908, Reed was stricken with paralysis, which incapacitated him physically to some extent, but apparently did not affect his mental powers. In December, 1908, the appellant, who was residing in California, stopped at Tucumcari, N. M., where Reed lived, and stayed at his house for a short time with him. Mr. and Mrs. Reed then went to El Paso, Tex., and remained there for some three or four months. From El Paso, Reed returned to Tucumcari, while Mrs. Reed went to Kansas to visit relatives. Thereafter Mrs. Reed returned to California. The following December, Mrs. Reed again visited Reed in Tucumcari and resided in the house with him. A few days before Christmas, Reed called upon an attorney, named Lange, and requested him to prepare deeds, conveying to Mrs. Reed two parcels of real estate in the city of Tucumcari. The deeds were prepared by Lange, and as drawn recited a consideration of $1,000 and $200, respectively. The deeds were signed and acknowledged by Reed, and by him left for record with the county recorder January 12, 1910. Thereafter, on January 27th, Reed caused said attorney to prepare additional deeds, by which he conveyed all the remainder of his real estate to Mary E. Reed; each deed reciting a stated amount of money as the consideration. These deeds Reed caused to

be recorded some time in February thereafter, and he de-
livered all said deeds to Mrs. Reed after they had been so
recorded. Within a month or six weeks after such deeds
had been recorded and delivered as stated, Mrs. Reed
left the city of Tucumcari and Mr. Reed's home, and re-
turned to California, where she remained until the fol-
lowing September or October, when she returned to Tu-
cumcari and remained for a few days, staying at the ho-
tel in Tucumcari. In the meantime, Joseph Z. Reed had
instituted action in the district court of Quay county to
set aside said deeds. In his complaint, so filed, he alleged
that said deeds were executed and delivered to said Mary
E. Reed in consideration of her promise and agreement
to live with, care for, and nurse him as long as he should
live; that she had left him soon after the execution of
said deeds, and had remained away continuously, and had
failed to comply with her said agreement. The prayer of
the complaint was that said deeds be cancelled, and the
title to said real estate be restored to him. After the fil-
ing of said complaint, Mary E. Reed returned to Tucum-
cari, as stated, evidently for the purpose of employing at-
torneys to defend such action. Such attorneys filed an
answer to said complaint, verified by Mrs. Reed, wherein
she denied that the consideration for said deeds was as
stated in the complaint, and alleged that the considera-
tion was an old note which Joseph Reed had executed to
her some 10 or 15 years before for the sum of $9,500.
Before the cause was tried, Joseph Z. Reed died.

After the death of Mr. Reed, and the probating of his
will, as stated, the present suit was instituted by the lega-
tees under his will, to set aside the said deeds and to quiet
the title of said legatees in and to the real estate described
in the complaint, which was all the real estate so convey-
ed to Mary E. Reed by said Joseph Z. Reed. The theory
upon which cancellation was sought is disclosed by the
following paragraphs of each count of the complaint,
wherein it was alleged:

"(4) That on, before, and after the date of the
above-described conveyance, the grantor, Joseph
Z. Reed, had suffered from divers strokes of

paralysis, and was feeble and sick in mind and body, and was unable to take care of himself; that the defendant, Mary E. Reed, volunteered and, without solicitation on the part of the said Joseph Z. Reed, came to him home in Tucumcari, N. M., and nursed and cared for the said Joseph Z. Reed, for a short period of time, without his request or solicitation; that on or about the 24th day of December, 1909, the said Joseph Z. Reed and the defendant entered into an oral agreement, which, by the terms thereof, was to be reduced to writing and signed by both parties, and the defendant thereby agreeing to live with and care for and nurse the said Joseph Z. Reed during the remainder of his natural life at his home in Tucumcari, N. M., and that in consideration of the promises and agreements so entered into and made by the said Mary E. Reed to and with the said Joseph Z. Reed, the said Joseph Z. Reed did convey to the said defendant, Mary E. Reed, by warranty deed, the said premises hereinbefore described; that no other consideration passed between the said Joseph Z. Reed and the defendant for the conveyance of said property.

"(5) That the said defendant, Mary E. Reed, induced and entered into the said oral agreement with the fraudulent intent and purpose of obtaining title to the said premises, and not with the intent of complying with the said agreement as aforesaid of caring for and nursing the said Joseph Z. Reed during the remainder of his natural life; and that the said defendant, Mary E. Reed, then well knowing the enfeebled condition of the said Joseph Z. Reed, in both body and mind, did obtain the said conveyance by the said false and fraudulent representations that she would take care of and nurse him for the remainder of his natural life; and that, as soon as the said Joseph Z. Reed had conveyed the said prem-.

ises to the defendant, Mary E. Reed, the said
Joseph Z. Reed, in compliance with his part of
the said oral agreement, presented to the de-
fendant a written agreement in which it was
specified that the said defendant should nurse
and care for the said Joseph Z. Reed, at his
home in Tucumcari, N. M., during the remainder
of his natural life, and which said written agree-
ment so submitted to the defendant specified the
consideration to be the conveyance, by the said
Joseph Z. Reed, to the defendant, of the said
premises; that said written agreement was in
the exact terms of the said oral agreement and
in accordance with the terms thereof; that the
said Mary E. Reed refused to sign said written
agreement, or give to the said Joseph Z. Reed
any reason for refusing to sign the same, and did
thereafter, without cause or provocation on the
part of the said Joseph Z. Reed, within a very
few days, leave the said Joseph Z. Reed, and his
house in Tucumcari, N. M., and return to her
home in the state of California, where she con-
tinued to reside until the death of Joseph Z.
Reed, occurring the 19th day of February, A.
D. 1911, at Tucumcari, N. M."

To the complaint appellant filed a demurrer, which was
subsequently withdrawn. Defendant then filed answer,
which is in part of its substance a cross-complaint also, in
which she admitted that she claimed title as the owner in
fee simple to said property by virtue of the said deeds set
out in the complaint and that she was in possession and
collecting the revenues thereof, denied the alleged oral
contract between said Joseph Z. Reed and defendant as
set out in paragraph 4 of each of the said eight causes of
action in the complaint, denied that she "did obtain the
said several conveyances by false and fraudulent repre-
sentations that she would take care of and nurse him for
the remainder of his natural life," denied that she vio-
lated any agreement with said Joseph Z. Reed and that
any such agreement, as alleged, was the consideration for

said conveyances to her. She further alleged, by way of affirmative 'defense, that the said several conveyances of said property were executed to her by said Joseph Z. Reed in consideration of the sums of money respectively recited therein, which were paid to him by her, as follows: That after her marriage to said Joseph Z. Reed she received from her father's estate by inheritance sums of money aggregating $10,000; that said Joseph Z. Reed, prior to the time she was divorced from him, borrowed said sums of money from her, used the same in conducting his business affairs, and agreed to repay the same to her; that on the 8th day of December, 1898, she and the said Joseph Z. Reed had ,a settlement of the amount due her on said account and agreed upon the sum of $9,500 as the amount due, for which amount he executed and delivered to her his promissory note for $9,500, dated December 8, 1898; that no part of the principal or interest of said note had been paid to her at the time of the execution of the said several conveyances, and that he was at that time justly indebted to her in said sum of $9,500, with interest thereon; that long before said conveyances said Joseph Z. Reed promised and agreed orally with her that he would convey all of said property to her in payment of said note indebtedness; that prior to the execution of said several conveyances she and said Joseph Z. Reed entered into an agreement whereby he agreed to convey said property to her in consideration of said indebtedness and in payment of said note, and that thereafter he did make said conveyances, and she accepted the same in settlement of said indebtedness; that at the time she received said sums of money ·by inheritance and loaned the same to him they were living in the state of Kansas, where the law provided that the moneys so received "should remain her sole and separate property;" and that at the time of the said settlement between them and the execution of said note for $9,500 by him they were still husband and wife, but that in the year 1905 they were divorced in Dallam county, Tex.

Defendant prays for affirmative relief, to-wit: That plaintiff be forever barred and estopped from having or

claiming any title in said property, and that her title thereto be quieted.

Plaintiff's reply to the answer was then filed, and defendant rejoined, denying the new matter set up in plaintiff's reply.

Plaintiff's reply and defendant's reply thereto do not change or affect the issues made by the complaint and answer.

Upon the issues framed, the cause was tried to the court, and findings of fact were made, upon which conclusions of law were stated, and judgment was rendered for appellees, canceling said deeds and quieting appellees' title to the real estate in question.

The eleventh, twelfth, and thirteenth findings were as follows:

"(11) That on, before, and after the 14th day of December, 1909, Joseph Z. Reed had suffered from divers strokes of paralysis, and was feeble and sick in mind and body and was unable to take care of himself.

"(12) That the defendant, Mary E. Reed, was formerly the wife of Joseph Z. Reed, but that a divorce was granted to said Joseph Z. Reed in the year 1905, and that at no time after the granting of said divorce were said Joseph Z. Reed and Mary E. Reed husband and wife.

"(13) That prior to the 14th day of December, 1909, the said defendant, Mary E. Reed, knowing of the sick and enfeebled condition of said Joseph Z. Reed, and knowing that said Joseph Z. Reed owned all of the property hereinbefore described, conceived the idea of fraudulently obtaining title to all of said property hereinbefore described, and that said Mary E. Reed at said time, without any solicitation on the part of Joseph Z. Reed, voluntarily came to the home of said Joseph Z. Reed, in Tucumcari, N. M., and nursed and cared for said Joseph Z. Reed for a short period of time, and without his request or solicitation. That at said time Mary E. Reed

being fully informed as to the physical and mental condition of said Joseph Z. Reed, as above found, fraudulently conceived the design of obtaining title to all of the above-described property, and with such fraudulent intent and design induced said Joseph Z. Reed to execute deeds to her for all of the above-described property. That said Mary E. Reed fraudulently, and with the intent to deceive and defraud said Joseph Z. Reed, represented and stated to said Joseph Z. Reed that, if said Joseph Z. Reed would transfer and deed to her all of his real estate, she would live with him and care for him and nurse him during the remainder of his natural life at his home in Tucumcari, N. M., and that during the remainder of his natural life she would be a companion to him in his enfeebled and afflicted condition. That, at the time said Mary E. Reed made said representations to said Joseph Z. Reed, it was done for the fraudulent purpose of inducing said Joseph Z. Reed to part with his property and convey the same to her, and that at said time said Mary E. Reed did not intend to fulfill or comply with said representations so made to said Joseph Z. Reed. That by means of such representations, and the influence which said Mary E. Reed had over said Joseph Z. Reed at said time, said defendant, Mary E. Reed, induced said Joseph Z. Reed to enter into a contract to the effect that in consideration of his transferring to her, the said defendant, all of his said real estate, she would live with him, care for him, and nurse him and be a companion for him during the remainder of his natural life. That said contract was entered into by and between said Joseph Z. Reed and said Mary E. Reed, and that at the time the above representations were made by said Mary E. Reed, and at the time said contract was entered into, said Joseph Z. Reed believed each and all of the said representations

so made to him by said Mary E. Reed, and believed that if he transferred his said real estate to said Mary E. Reed she would comply with the conditions of said contract and that she would live with him, care for, and nurse him, and be a companion for him during the remainder of his natural life. And said Joseph Z. Reed relied upon each of said representations so made by Mary E. Reed as above found, and that said Joseph Z. Reed at said time, desiring the companionship of said Mary E. Reed and desiring that she should live with him, care for, and nurse him during the remainder of his natural life, and believing each of the representations so made, and believing that said Mary E. Reed would fully and faithfully comply with the terms and conditions of said contract, executed to said Mary E. Reed deed of conveyance for all of the above-described property." (Here follows a description of the real estate not necessary to be incorporated herein.)

From the judgment entered for appellees, appellant prosecutes this appeal.

### OPINION OF THE COURT.

ROBERTS, C. J. (after stating the facts as above)—
[1] In discussing the questions presented by appellant, upon which she relies for a reversal of the judgment of the trial court, we must assume that the consideration for the conveyances made by Reed to her was the promise on her part "to live with him and care for him and nurse him during the remainder of his natural life at his home is Tucumcari, N. M.," as found by the court. This finding was based upon conflicting evidence, and, there being substantial evidence to support the same, it will not be disturbed in this court. The court also found that, at the time the promise was made, Mary E. Reed had no intention of keeping and performing the same, but made such promise fraudulently and with intent to deceive and defraud said Joseph Z. Reed. There was no positive evi-

dence that appellant had no intention of keeping her promise, at the time it was made. It would, indeed, be an exceptional case, where positive proof of fraud in such a case as this could be adduced, for a rational person, who set about to defraud another, would not proclaim his evil intent in the open. This finding by the court was predicated upon the facts and circumstances proven in the case, among which the following may be enumerated:

[2] The fact that she visited him soon after he was stricken with paralysis, and paid him marked attention; bestowed upon him the tenderest care, and talked in such a manner that he naturally assumed that she intended to live with him during the remainder of his life and care for him. After securing the execution of the deeds and their delivery and recordation, she, within a short time, left him and returned to her home in California, where she remained until after he had instituted suit to set aside the deeds. In her answer to the suit filed by Reed she denied that she ever promised to live with, care for, and nurse him, and that such promise was the consideration for the deeds, and set up an entirely new and different consideration. She set up the same defense in the present suit, which the court found was untrue. There were other minor facts, developed upon the trial of the case, tending to show a design on her part to secure deeds to the real estate, from which, together with the facts above recited, the court could and did find an actual purpose to deceive.

"Fraud therefore is properly made out by marshaling the circumstances surrounding the transaction and deducing therefrom the fraudulent purpose where it manifestly appears, as by presenting the more positive and direct testimony of actual purpose to deceive; and, indeed, circumstantial proof in most cases can alone bring the fraud to light, for fraud is peculiarly a wrong of secrecy and circumvention, and is to be traced, not in the open proclamation of the wrongdoer's purpose, but by the indications of

covered tracks and studious concealments."
Smith on the Law of Fraud, § 266.

[**3, 4**] Having concluded that there were facts and circumstances proven on the trial of the cause which justified the court in finding as he did in this regard, we come now to the consideration of appellant's main contention, which is that representations to be fraudulent, must relate to a present or past state of facts, and relief for deceit cannot be obtained for nonperformance of a promise looking to the future.

The majority of the courts, in the ordinary cases of fraudulent representations, hold in accord with appellant's statement of the law; but some jurisdictions hold that, if the promise to perform some act in the future is made with the design and intention of the promisor to disregard it, and with no intention to perform it, and was made to deceive and entrap the other party, then such promise, in case the refusal to perform takes place, will amount to actual fraud. Elliott on Contracts, § 83. The question will be found discussed and the authorities reviewed in extensive case notes to the case of Cerny v. Paxton & Gallagher Co., 10 L. R. A. (N. S.) 640, and Miller v. Sutliff, 24 L. R. A. (N. S.) 735.

But the courts of this country, with but few exceptions, treat contracts by a grantee to furnish a home for and support to a grantor, when constituting the consideration for a conveyance by the grantor of the whole or major portion of his property, as being in a class by themselves, which are not governed by the ordinary rules which apply in the construction of contracts. While the agreement, which constituted the consideration for the conveyance in the present case, was not for support, being for companionship, care, and nursing, yet it is so nearly akin to those contracts for support, so often before the courts, that it must be placed in the same class, and is accordingly governed by the principles applicable in such cases. The value of the services, care, and attention contracted for cannot be measured in money. In this case, while others might have administered to the necessities of the grantor, in caring for and nursing him, they could not

give to him that which he understood he was contracting for, viz., the care and nursing by one upon whom, if the witnesses are to be believed, he bestowed his love and affection and beliefed that he was receiving in return, and would continue to receive, daily evidences of similar devotion and affection, the loss of which, and her ministrations to his wants, could not be supplied by others, or its loss measured in money, as stated. Such a consideration as the above is not regarded as an ordinary obligation, but is of a peculiar character, imposing upon the grantee burdens which must be performed, if he would retain the benefits of the contract. Courts of equity, because of the inadequacy of any legal remedy, do not hesitate to set aside such contracts, upon proof of failure to perform by the grantee. Such courts are not so much concerned as to the proper theory upon which such contracts may be avoided, as they are that they must be set aside in order to prevent grave injustice and the imposition upon aged people, by unscrupulous persons, who pretend love, devotion, and friendship, where no one of such elements exists. Cancellation is the only adequate remedy applicable to such a case, where there is a refusal or intentional failure to perform. This being true, it is only natural that we should find the courts at variance, upon the proper equitable ground upon which such cancellation should be predicated.

In Kentucky (Reeder v. Reeder, 89 Ky. 529, 12 S. W. 1063), such contracts are canceled on the ground that the only certain measure of damages for the breach is to place the parties in statu quo; the damages for the breach being too speculative and conjectural to be passed upon by a jury. Upon somewhat similar grounds such contracts are avoided in Rhode Island. Grant v. Bell, 26 R. I. 288, 58 Atl. 951. Several of the state courts cancel such contracts on the ground of failure of consideration. Haataja v. Saarenpaa, 118 Minn. 255, 136 N. W. 871; Lane v. Lane, 106 Ky. 530, 50 S. W. 857. Many of the courts have canceled such contracts, without stating any ground for so doing. Tomsik v. Tomsik, 78 Neb. 103, 110 N. W. 674; Humbles v. Harris, 151 Ky. 685, 152 S. W. 797;

Peck v. Hoyt, 39 Conn. 9; Bruer v. Bruer, 109 Minn. 260, 123 N. W. 813, 28 L. R. A. (N. S.) 608. In Indiana (Cree v. Sherfy, 138 Ind. 354, 37 N. E. 787) and Wisconsin (Glocke v. Glocke, 113 Wis. 308, 89 N. W. 118, 57 L. R. A. 458), it is said that such conveyances are upon condition subsequent and will be defeated by a failure of the grantee to perform. In Illinois (Frazier v. Miller, 16 Ill. 48; Oard v. Oard, 59 Ill. 46; Cooper v. Gum, 152 Ill. 471, 39 N. E. 267), Oklahoma (Spangler v. Yarborough, 23 Okla. 806, 101 Pac. 1107, 138 Am. St. Rep. 856), and some other states, such deeds are canceled and set aside on the theory of fraud in the inception of the contract. In the case of McClelland v. McClelland, 176 Ill. 83, 51 N. E. 559, the court held that the conduct of the grantee in breaching his agreement to support the grantor gave rise to the presumption of the abandonment of his contract and of a fraudulent intent in entering into it.

[5] In the case now under consideration, the complaint is based upon the theory of fraud in the inception of the contract, following the Illinois rule. Appellant, as stated, contends that this theory is incorrect. While, as applied to the ordinary contract, this court might be inclined to agree with this contention, we cannot do so in the present case. As stated, contracts like the one now under consideration stand alone, and are not subject to the ordinary rules applied by courts in other cases. The necessity of avoiding such contracts, in cases where there is an intentional and inexcusable failure to perform by the grantee, in order to do justice, is so paramount, and cancellation being the only adequate and complete remedy in such a case, the court will give the remedy upon any reasonable theory. In other words the court in such a case, upon intentional and inexcusable failure to perform such a contract, will decree cancellation without much regard to or consideration of the theory upon which such cancellation is sought. This being true, this court will uphold cancellation in such cases where the complaint proceeds upon any reasonable theory. The theory of fraud, in the inception of the contract, in such a case

Anderson v. Reed, 20 N..M. 202.

will support a decree of cancellation, where there is an inexcusable and intentional failure to perform, and the facts in the case show that the grantee never intended to perform the contract which the court found she entered into. She says that no such contract was ever made by her, and, this being true, we may reasonably assume that she never intended to perform or keep it.

The various theories upon which the courts have decreed cancellation. of such contracts will be found discussed in an extended note to the case of Dixon v. Milling, 43 L. R.'A. (N. S.) 916.

[6] In view of our conclusion that the complaint stated a good cause of action, in so far as its theory was concerned, the question of the survival of the cause of action is eliminated by our statute (section 3087, C. L. 1897), which provides that:

> "In addition to the causes of action which survive at common law, causes of action for mesne profts, or for an injury to real or personal estate, or for any deceit or fraud, shall also survive, and the action may be brought, notwithstanding the death of the person entitled or liable to the same."

But, waiving the statute, all the reported cases dealing with the question hold that the grantor's right to rescind for breach of condition as to support descends to his heirs or representatives. See White v. Bailey, 65 W. Va. 573, 64 S. E. 1019, and case note to the same case in 23 L. R. A. (N. S.) 232.

Several other questions, of minor importance, were discussed by counsel for appellant in their brief. All these questions have been examined by the court, but none of them warrant a reversal of the case.

Finding no error in the record warranting a reversal, the cause will be affirmed, and it is so ordered.

HANNA and PARKER, J.J., concur.