JOHN E. COPASS, APPELLANT, V. VERDA WILBORN ET AL., APPELLEES.

296 N. W. 565

FILED FEBRUARY 28, 1941.   No. 30988.

*F. A. Hebenstreit* and *J. C. Mullen,* for appellant.

*Jean B. Cain* and *C. R. Iungerich, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

This is an action in equity to set aside certain deeds and conveyances to realty and transfers of personal property made to defendant Verda Wilborn. The cause was tried upon the plaintiffs' first amended petition, which contained allegations of false and fraudulent representations, made by defendant Wilborn, knowing the same to be false, and which the plaintiffs believed to be true and relied thereon to their damage. The petition further alleged lack of consideration, asked an accounting and for such other and further relief as may be just and equitable. Defendant Verda Wilborn denied the allegations of fraud and lack of consideration, admitting that the conveyances of real estate and the transfers of personal property were made to her.

Mary B. Copass departed this life, and it is stipulated that John E. Copass is the owner of all the real and personal property involved, and the only plaintiff now affected by this appeal. The defendant banks, having certain moneys on hand claimed by plaintiff John E. Copass and in the name of Verda Wilborn, were made parties defendant for the purpose of enjoining them from paying any of such moneys to her. John E. Copass and Verda Wilborn will be referred to in this opinion as plaintiff and defendant, respectively.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto. The trial court sustained the demurrer and dismissed plaintiff's action. From this ruling plaintiff appeals.

The record discloses: Plaintiff John E. Copass, 79, and his semi-invalid wife, Mary, 74 years of age, through their combined efforts accumulated some considerable real estate, consisting of a small home in Dawson, Nebraska, valued at $500 to $700, and an 840-acre ranch in Custer county, Nebraska, valued from $12,500 to $20,000, and certain personal property. About four years previous to the trial of this case, plaintiff visited a brother in Kentucky, returning by way of Illinois where he visited defendant, a niece of plaintiff's wife, and whom he had known since she was a

small girl. He endeavored to persuade her to come to Nebraska, to live with him and his wife and to help take care of her aunt. After his return home he corresponded with defendant, and she finally consented to come, if he would send her money for the trip, saying that she had nothing to do for a period of 19 months, and he sent her $20. He had written her as follows, to use his own language: "We would fix her out good," "so she would have something in her older days, we would give her what we had when we was done with it." Defendant came to plaintiff's home November 1, 1937, and after she had been there for 30 days plaintiff said she could see the situation and told her if she would stay he would fix it so she would have some money and would give her one-fourth of the income from the ranch for her expenses. November 17, 1937, plaintiff and his wife transferred by warranty deed to defendant the home place located in Dawson, the consideration reciting: "For and in consideration of the sum of $1.00 dollar, love and affection, past and future care." There also appears in the deed the following: "As a part of the consideration for this conveyance, grantee agrees to keep house for grantors during their lifetime, she to do the housekeeping, cooking, washing, and nursing for both of grantors during their lifetime;" and further: "It is understood that grantors reserve a life estate in the above described property, but that upon the death of both grantors absolute fee simple title shall vest in grantee."

December 17, 1937, plaintiff and his wife conveyed by warranty deed to defendant the 840-acre ranch in Custer county, the consideration reciting: "The sum of $1.00 and other valuable consideration." The following clause is contained in the deed: "It is understood and agreed that the grantors herein are to retain possession and control of the above described premises during the lifetime of either of said grantors, and at the death of the last surviving one of the grantors above named, the entire fee simple title to the above described land shall pass to the grantee above named in absolute title."

Subsequently, defendant, fearing that the heirs at law of plaintiff might interfere, suggested such fact to him. He then stated he would make defendant safe, in that she needed spending money, and he gave her a bill of sale, reciting: "In consideration of the sum of $1.00 and other valuable consideration," and in addition, "It being the intention to convey to the said Verda Wilborn any and all personal property which we now own, either in whole or in part, located upon the above described premises, and convey to the said Verda Wilborn any and all personal property which we may own, either in whole or in part, at the date of the death of the survivor of us, belonging to us, now in our possession at the place last aforesaid." This bill of sale also included any rents due or which may become due for the rental of the ranch. There is also an interest in a chattel mortgage conveyed by plaintiff to defendant in the sum of $2,218, which defendant claims constituted a gift, while plaintiff claims that such conveyance was made with the understanding and arrangement that she was to hold title to the same for plaintiff, and that all transfers herein referred to were testamentary in character, and the property evidenced thereby was to become the property of defendant upon the death of both plaintiffs.

The record further discloses a letter directed to the Security State Bank of Broken Bow, signed by plaintiff and defendant, authorizing the division of live stock shipments made by one J. R. Griffith, tenant on the ranch, deposited to defendant's account, in accordance with a note and mortgage dated December 9, 1937, in the total amount of $2,218. This note recites: "February 28, 1941 after date," J. R. Griffith promises "to pay to Verda Wilborn" such amount. The note is supported by a chattel mortgage of even date, covering a half-interest in chattels owned by Griffith. Thus, defendant became possessed of all the property, real and personal, belonging to plaintiff. On June 1, 1939, defendant received $1,623 from the sale of cattle on the ranch, and in addition $1,500 from the tenant, to apply on the chattel

mortgage, making a total from both sources of $3,123. Out of this amount she offered to pay plaintiff $811.60, as his share of the proceeds, which he refused, contending that he made no such agreement; that he agreed to give defendant one-fourth of the rents and profits from the ranch and one-fourth of the proceeds of the Griffith mortgage. By reason of the transfers and actions on the part of defendant, plaintiff was left in the position of furnishing full support of himself and his wife and defendant, paying all of the taxes, and he had no money with which to protect the life estate in the real estate. Subsequently, defendant gave $600 to the plaintiff for such purpose. Reference is made to payment of the sum of $1,400 by defendant to plaintiff after the filing of the present action.

The object and effect of a demurrer to the evidence refer to the court the application of the law to the evidence. 26 R. C. L. 1060, sec. 68. In applying this rule, the present state of plaintiff's first amended petition, relating to fraud practiced by the defendant, in making false representations to procure plaintiff's real and personal property, and the evidence in support thereof fail to show fraud at the inception of the agreement. However, plaintiff's amended petition contains allegations, in substance: Having thus secured title to the real and personal property of the plaintiffs, the defendant immediately started a "campaign of abuse" toward plaintiff, the object of which was to "shorten his life" and bring about his death by worrying, quarreling with and calling him insulting names at various times; on one occasion menacing him with a knife and assuming a disagreeable and fighting attitude. Realizing that Mrs. Copass was sickly, delicate and frail, defendant did not treat her in the same manner, but has been reasonably kind to her, fully understanding that she would soon die. Defendant's answer denied these allegations, joining the issues thereon.

The evidence in respect of the foregoing allegations is in substance as follows: After the difficulty about the division of the money, defendant did quarrel with plaintiff and call

him names of an insulting nature, and did on one occasion make motions toward him with a knife in a menacing manner, and, on other occasions, she, would shake her fist under his nose and threaten to kick him out of the house, and to "bend the stove poker" around his neck. When certain persons would call at the Copass home, or stay for a meal, the defendant would be cold and disagreeable, making the guests feel uncomfortable and unwelcome. She declined to put up fruit that plaintiff had gathered and prepared, would take food off the table before he had finished his meal, and concealed food and carried it to her room, and on occasions pulled from under Mrs. Copass, sitting in a chair, a quilt which had been placed there by her husband to make her more comfortable. Defendant indicated that a wheel chair purchased for Mrs. Copass was not a good investment. She at different times slammed doors, causing Mrs. Copass to become nervous and to cry, resulting in her being removed to another place, where she could be happier and more comfortable, and for which plaintiff paid $4 a week, he accompanying her, and when persons came to assist in moving Mrs. Copass from her home, defendant denied them admission.

In considering a demurrer to the evidence: "Every reasonable intendment in favor of the plaintiff is to be drawn from the evidence adduced, and if, from all the facts disclosed, there is any substantial evidence tending to show that plaintiff is entitled to recover on the whole case, the demurrer should be overruled." 26 R. C. L. 1061, sec. 69.

Distinction exists as between an ordinary commercial contract and a contract of the kind here considered. Contracts of the latter class are in a different classification and not subject to the ordinary rules applied by courts in other cases. *Anderson v. Reed,* 20 N. M. 202, 148 Pac. 502, L. R. A. 1916B, 862.

The disagreements and differences between plaintiff and defendant, taken separately, were not of a very serious nature, but in the present state of the record, there is uncontroverted evidence of a situation that would make it

practically impossible for plaintiff to return to his home and receive the fruits of this oral agreement. In transactions, such as exist here, an element of confidence is reposed by the old people in the grantee, sacred in its nature, a breach of and retention of the benefits of which no court should tolerate by a refinement upon technical rules and principles of law. See *Bruer v. Bruer*, 109 Minn. 260, 123 N. W. 813, 28 L. R. A. n. s. 608; *Priebe v. Sette*, 197 Minn. 453, 267 N. W. 376; *Bogie v. Bogie*, 41 Wis. 209. Persons incapacitated by the infirmities of age naturally feel a strong desire to place the fruits of their industry and enterprise where they will secure for them during the balance of their lives suitable and proper care, without further labor on their part.

This and other courts have canceled such contracts without stating any particular grounds for so doing. *Tomsik v. Tomsik*, 78 Neb. 103, 110 N. W. 674; *Humbles v. Harris*, 151 Ky. 685, 152 S. W. 797; *Peck v. Hoyt*, 39 Conn. 9.

To state that the foregoing acts of defendant, as testified to and complained of by the plaintiff, were trivial and insignificant in their nature and that she has not refused to conform to or perform the obligations of the oral contract would be to place a too-narrow construction on the contract, in that such a construction ignores a most important element of a contract of this kind, viz., that the plaintiffs were to receive the affectionate care that they fully believed the defendant could and would give to them. Defendant was bound, under the circumstances, to have anticipated the idiosyncrasies of old age. What her evidence would show in support of her answer or denial, naturally, is not included in the record. The only evidence to support her thus far on such charge is a doctor's testimony that when he visited Mrs. Copass she was kept clean and he believed defendant to be a good housekeeper. There appears in the first amended petition a statement that the defendant took care of Mary B. Copass reasonably well. The defendant, in order to comply with the agreement, still has certain duties and obligations to perform thereunder.

She agreed to take care of the plaintiffs, keep house for them, do their cooking, washing and nursing, during their lifetime.

With reference to the right of the court to grant relief in equity under a general prayer therefor, the following authorities apply:

In *Burnham v. Bennison,* 121 Neb. 291, 236 N. W. 745, this court held: "The general rule of equity pleading which is preserved by our Code is that, if there is a prayer for general relief, as well as for special relief, the court may extend the relief specially prayed for and give such other relief as the case warrants, consistent with the general frame and purpose of the petition." Followed in *Hilton v. Clements,* 137 Neb. 791, 291 N. W. 483. See, also, *Wood v. Speck,* 78 Neb. 435, 110 N. W. 1001.

We conclude the trial court should have overruled the demurrer to the evidence and heard defendant's evidence on this controverted question, to properly determine the rights of the parties in equity. Its judgment is reversed and the cause remanded for further proceedings in accordance with this opinion.

REVERSED.