LAURA WILCOX, APPELLEE, V. JOHN W. WILCOX ET AL., APPELLANTS.

293 N. W. 378

FILED JULY 26, 1940. No. 30849.

*William L. Randall* and *John E. Hedrick*, for appellants.

*William E. Lovely, contra.*

Heard before SIMMONS, C. J., ROSE, PAINE, CARTER, MESSMORE and JOHNSEN, JJ.

PER CURIAM.

The defendants appeal from a decree of the district court, ordering and directing defendants to convey forthwith by proper deed certain real estate, described in plaintiff's petition.

The plaintiff's amended petition alleges, in substance, certain facts relied upon as constituting false and fraudulent representations, made to the plaintiff by defendant John W. Wilcox, to induce the plaintiff to consent to the use of certain moneys belonging to her, to be entrusted to and used by John W. Wilcox, her son, to purchase real estate and repair the same, the son representing to the plaintiff, his mother, that he would provide her with a home and maintenance for the balance of her life. The decree is in accordance with the facts herein stated. The answer is, in effect, a general denial.

The record discloses that plaintiff, 70 years of age, had been a widow since 1906, and had the care and custody of her seven children, five boys and two girls, the eldest 14 years old at the time of their father's death and the youngest 10 months. The family lived at Syracuse, Nebraska, on a farm, and in 1909 moved to Franklin, Nebraska, where the plaintiff purchased an acreage for $1,200, from which she made a living for the family. Later she traded this acreage for property in Brownville, Nebraska, and lived there until three of the boys, in 1917 and 1918, entered the United States army. She then rented the property and took up nursing, making a living for the minor members of the family still at home. In 1920 she purchased property in Wymore for $1,900, paid $900 down and gave a mortgage on the real estate for $1,200.

The record discloses certain contributions made by some of the children at different times for her support and

maintenance and for that of a grandchild. Controversy arises as to contributions made by defendant John W. Wilcox from and after 1920 when he lived with plaintiff in Wymore, where he was employed on the railroad as a brakeman, earning upwards of $150 a month. He remained in Wymore until 1926; then went to Omaha, where he lived with a sister. Plaintiff remained in Wymore for six years after John left. Plaintiff's testimony is that John made no contributions during the six years that she remained in Wymore, and when he lived with her he contributed an ordinary amount for board and room. The testimony of John W. Wilcox with reference to the amount he contributed ·to reduce the mortgage on the Wymore property is not impressive. The history of the different mortgages on the Wymore property will not be detailed. During all of the time, until it was sold in April, 1938, only $400 had been paid on the mortgage, and there remained $800 to be paid. John stood in a confidential relationship to his mother with reference to the home in Wymore, and what should be done with it in any event; by such relationship plaintiff believed John, not being married, would take an interest in the Wymore property and help to pay for. it; that he could handle it better than she could, and if the property should eventually be sold, the money received therefrom would be placed in a property as a home for her, so on June 14, 1937, she deeded the Wymore property to John. It was sold in April, 1938, and $750 was received for the equity. Prior to this sale, the plaintiff had consulted a real estate dealer about buying property in Omaha. Finally, a purchase of real estate in Omaha was made, May 27, 1938, $500 was paid down and $200 expended for repairs. The property was taken in the name of defendant John W. Wilcox; he attended to the repairs and the purchase and signed the mortgage evidencing the balance of indebtedness. He was able to secure the mortgage on the representation that he was steadily employed. The purchase price for this property was $2,000.

It is clear from the record that plaintiff made consider-

able inquiry with reference to the purchase of the property, the purpose for which she desired to use it, and the fact that it would be her home, and that her money would constitute part of the purchase price. The property is used as a rooming house. On June 12, 1938, John W. Wilcox made a written agreement, which is in part as follows: "I, John W. Wilcox, on this 12th day of June, 1938, wish it known that my mother, Mrs. Laura Wilcox, is to have a home with privileges, with me, in property known as * * * as long as she lives. * * * This statement and agreement above made is because of indebtedness to my mother, Laura Wilcox." The statement, "indebtedness to my mother," could only mean that John recognized his obligation to his mother for money received from her property at Wymore, and used as a down-payment as part of the purchase price of the Omaha property. January 3, 1939, John W. Wilcox married the defendant Esther Wilcox.

Conflict arises in the evidence as to the amount, if any, contributed by defendant John W. Wilcox to his mother, in compliance with the written agreement. His answer to this is: His mother received all moneys paid as rent from the home for her support, the amount varying from $50 to $62 a month. The plaintiff testified that her son asked her to leave the premises, called her vile names, and told her to go on relief and try for old-age assistance. All of these charges John denies. He was unable to secure steady employment in Omaha and attempted to sell the Omaha property within one month from the date of its purchase. The testimony of defendant John W. Wilcox is evasive, equivocal and indefinite in every particular. We conclude the facts create a constructive trust.

"A constructive trust is a relationship with respect to property subjecting the person by whom the title to the property is held to an equitable duty to convey it to another on the ground that his acquisition or retention of the property is wrongful and that he would be unjustly enriched if he were permitted to retain the property." Restatement, Trusts, 5, sec. 1, e.

"Where the owner of an interest in land transfers it *inter vivos* to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if

"(a) the transfer was procured by fraud, duress, undue influence or mistake." Restatement, Trusts, 135, sec. 44.

A case similar to the one at bar and cited by the plaintiff is *McIntire v. McIntire,* 75 Neb. 397, 106 N. W. 29. The decree set aside a conveyance of a similar nature to that involved in the instant case, made by a mother to her son and daughter-in-law upon an express promise to support her. Subsequently, she was ejected from the home and compelled to seek support elsewhere. The decree of the district court canceling the conveyance ·was affirmed on general equitable principles.

The judgment of the trial court is

AFFIRMED.