ELMER M. McCOY, APPELLEE, V. MINEY CUNNINGHAM ET AL.,
APPELLANTS.

4 N. W. (2d) 835

FILED JULY 10, 1942. No. 31363.

*F. J. Reed,* for appellants.

*Auburn H. Atkins, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CAR-
TER, MESSMORE and YEAGER, JJ.

SIMMONS, C. J.

This is an action brought to reform or cancel a deed to
real estate, wherein one Whitnack and wife conveyed cer-
tain property in Mitchell, Nebraska, to the plaintiff and de-
fendant Miney Cunningham, as joint tenants with right of
survivorship. Plaintiff prayed for a decree that he was ab-

solute owner of the property, for a judgment for rents, possession, and equitable relief. The defendants prayed that the prayer of the plaintiff's petition be denied and that they have equitable relief.

The trial court entered a decree finding generally for the plaintiff, quieted title in the defendant Miney Cunningham and granted plaintiff a money judgment for all moneys invested in the land. From this decree, defendants appeal and by argument present two propositions: First, that the evidence fails to show fraud, collusion or misconduct upon which relief to the plaintiff may be based; and, second, that the court, by its decree, compelled defendants to become purchasers of the property and in effect wrote a new contract for them, contrary to all the evidence as to what the parties intended to do.

No question of pleadings is presented.

Defendants in their brief state: "The record is voluminous and evidence on essential matters is widely scattered in the record and we think it would serve no useful purpose to encumber this brief by specific citations of all of the numbers of the questions and answers as they appear in the record." Defendants then make an extended statement of their version of the evidence with but three citations to the bill of exceptions. Rule 14 a 2 of this court requires the appellant to support his contentions as to the evidence by citation to page and question in the bill of exceptions where the testimony relied upon may be found. This rule is not for the purpose of relieving the court of the duty of examining the entire record, but to enable a better understanding of appellant's argument and to make more certain that "essential matters" are not overlooked in determining the questions presented in the appeal. Counsel should observe these rules in presenting appeals.

The evidence forms in general a fairly clear pattern, although the details are in conflicting confusion.

The plaintiff, an elderly bachelor, owned a farm, free of debt, in Sioux county. The defendants, husband and wife, somewhat younger than plaintiff, owned a farm a mile or so

away. For a number of years the parties to this action resided on their lands, exchanging work and neighborhood courtesies, and lived as good friends.

The plaintiff was afflicted with "shaking palsy." Mrs. Cunningham, throughout these years, rendered many kind services to the plaintiff in helping care for him and furnishing him meals, etc. This the plaintiff appreciated and on occasion suggested that the defendants move to his farm and care for him. There were general discussions that his farm or a part of it would become theirs. Nothing came of those discussions.

In 1939 the defendants were confronted with the loss of their farm by foreclosure. They attempted to trade their equity in the farm for the acreage in Mitchell, Nebraska, that is involved in this action. One Whitnack owned the acreage, and it was also under foreclosure. The defendants and Whitnack were unable to work out a trade and nothing came from those negotiations. Plaintiff knew of the negotiations and of the Whitnack property.

In the fall of 1939 plaintiff sold his farm for a cash consideration of $3,400 and placed the money on deposit in a Scottsbluff bank. Thereafter the plaintiff and Mr. Cunningham inspected two or three pieces of property with the idea of the plaintiff purchasing the property and the defendants living with him. In early November Mr. Cunningham wrote Whitnack and told him that plaintiff might be interested in buying the acreage and suggested that he, Whitnack, come and see them about it. Cunningham testified that McCoy asked him to write this letter. Immediately thereafter Whitnack, accompanied by a Mr. Alexander, came to the defendants' farm. Cunningham also brought the plaintiff to the farm and negotiations were started. In the meantime the plaintiff and Mrs. Cunningham had been to Scottsbluff and were advised of the amount of mortgage indebtedness against the Whitnack property. Whitnack and the plaintiff drove to Mitchell, inspected the property and returned to the defendants' farm. There discussions continued between the plaintiff and Whitnack. They were

$400 apart on the price at dinner time. Cunningham, in the absence of the plaintiff, inquired of Whitnack about the negotiations and, being advised of the situation, Cunningham told Whitnack that he would pay the $400 difference and for Whitnack to accept the plaintiff's offer. That Whitnack did without any one advising the plaintiff of the promise to pay the $400. A memorandum of this agreement was then drawn up by Cunningham and signed that day by the parties. This memorandum was not produced at the trial.

Thereafter, the parties met by agreement in Scottsbluff on November 13, 1939, and the contract of purchase was entered into with Mrs. Cunningham and the plaintiff named as purchasers. Plaintiff that day placed in escrow, with the attorney who prepared the contract, the amount necessary to pay the mortgage indebtedness. $700 additional was needed. The question came, where could that be borrowed? It was immediately suggested that Mr. Alexander would probably loan it to them. Mrs. Cunningham and Whitnack drove to Minatare, consulted Alexander and, without any further examination of the property or consultation with the plaintiff, Alexander agreed to make the loan. The deed of conveyance named plaintiff and Mrs. Cunningham as grantees as joint tenants with right of survivorship. Plaintiff understood the nature of this deed and approved it. The mortgage was executed by plaintiff and defendants. These three instruments all bear the same date, November 13, 1939. The title was approved and the transaction completed within the next two or three weeks. Also, the $400 was paid to Whitnack in cash about that time. The defendants did not tell plaintiff of it, quite clearly intended to keep knowledge of that payment from him, and he did not learn of that payment until this litigation began.

Plaintiff testified that the day following the signing of the papers Mr. Cunningham for the first time became disrespectful and insulting and continued that course of conduct. There also is evidence that shortly thereafter the Cunninghams told others, in effect, that the papers were signed, they had the property and were going to keep it. Those state-

ments were not retold to the plaintiff until some time later.

The plaintiff and the defendants returned to their Sioux county farms. Plaintiff collected the rents on the acreage until March 1, 1940. The defendants went to Texas, and the plaintiff cared for their stock. Upon the defendants' return from Texas they began to move personal property from the Sioux county farm to the acreage. They repaired the buildings, changed the improvements, placed new ones thereon, and took complete charge of the acreage, and apparently did not consult or consider the plaintiff as to his wishes in the matter. Mr. Cunningham testified that the cost of these improvements was several hundred dollars. The amount that they increased the value of the property is not clear.

About February 13, 1940, plaintiff was injured in an automobile accident. Defendants had knowledge of the injuries and that plaintiff was treated by a doctor at Morrill, and testify that they drove to Scottsbluff to a hospital to inquire about him, did not find him there, did not go to the near-by town of Morrill to try to find him, were advised that the accident was not serious, and assumed that he had gone to visit relatives. Some two weeks later they were advised that the plaintiff was in Morrill. Mr. Cunningham later saw plaintiff there and talked to him about coming to the acreage. Plaintiff told him that he, plaintiff, was not coming, that they had not hunted him up when he was sick, that he had been insulting, etc. The Cunninghams treated it as a childish irritability and apparently decided to let him get over it and come to them, and testify that they saw no reason for looking him up. They take the position here in their brief that "They were under no more obligation to hunt him up and care for him than they would be for any other neighbor." This attitude after the conveyance in question is in marked contrast to that which they showed to him prior to this transaction.

The defendants moved to the acreage March 3, 1940, and proceeded to occupy and improve it as though they were complete owners. Weeks passed. They apparently became aware of the fact that the plaintiff was not placated. Plain-

tiff became convinced that he had been "framed." He sent a lawyer to see the Cunninghams. They sent an old neighbor to see him, who advised reconciliation and cautioned about the costs and dangers of litigation. August 21, 1940, and again on September 17, 1940, Mr. Cunningham wrote letters to plaintiff urging him to come and make his home with them (keeping and producing carbon copies of the letters). Mrs. Cunningham, knowing that plaintiff was in the nearby town of Morrill, made no effort to see him or contact him until June.

The defendants failed to pay the taxes on the property or keep it insured. They agreed to pay the $700 mortgage. They did not pay the interest on it and have allowed it to go to foreclosure. That action was pending when this case was tried.

The record is clear that there was no consideration which passed from Mrs. Cunningham to Whitnack or to the plaintiff in payment for this property. The $400 secretly paid Whitnack was an inducement to Whitnack to accept plaintiff's offer. So far as the plaintiff is concerned, he paid the entire consideration recited in the instruments for the conveyance of the property.

So far as a consideration moving to the plaintiff from the defendants or either of them is concerned, the most favorable view of this evidence is that there was an implied agreement on their part to furnish the plaintiff a home and care. There were no discussions about it at the time the transaction was consummated. There is no other possible consideration to be inferred. No other consideration is claimed. This home and care were never furnished to the plaintiff.

Plaintiff bases the allegations of his petition on fraud, deceit and conspiracy to deprive him of his property.

The trial court made an extended finding of fact, and found generally for the plaintiff and against the defendants and that they had by deception, fraud, evasion and inequitable conduct received an interest in and possession of the property. We reach the same conclusion. On its face this transaction has the appearance of honesty, as most fraudu-

lent transactions do. Defendants argue that plaintiff did not know of the deceit as to the $400 payment or of the statements made to others until long after he refused to come to the property and make his home there, and that therefore he could not have been moved by those things when he refused to come to the Mitchell property to live. However, this evidence shows the attitude and purposes of the defendants. Those who start out to defraud do not proclaim their purposes to the world. Fraud is generally a wrong perpetrated by secrecy and circumvention. It is usually established by uncovering hidden tracks and studious concealments. The entire transaction shows the consummation of a studied plan to secure title to and possession of the property purchased with the plaintiff's money. It is clear that defendants wanted this property and were unable to purchase it with their own money. The secret payment of the $400 to Whitnack to make certain that the deal would not fail speaks loudly of their desires and purposes. To this is added their admission that they knew that, had plaintiff been advised of the payment, he would not have purchased the property. Thereafter they either ignored or slighted the plaintiff; they did not tender him, when he was injured, that solicitous care for which he had bargained; they were going to let him come to them after their ignoring him had cured him of what they considered to be a childish irritability; they ignored his interest in the property as they prepared it for their own use. It was not until the storm signals of litigation arose that they became solicitous that he come to the home that his money had purchased in order that he might be given their care. Plaintiff was entitled to something more than meals and shelter. Plaintiff was entitled to a home with that affectionate care that theretofore the defendants had given to him and which he had every reason to expect would be given to him by the defendants in return for his bounty. They remained indifferent when action would have been some evidence of good faith. They acted only after it was impossible for them to fully perform and for plaintiff to accept performance. Any performance

which the Cunninghams could have made after March 1, 1940, would not have been that for which plaintiff bargained. It is clear that, had he entered the home and accepted board and lodging, the plaintiff would not have been in the position of one occupying his own property with the rights of decisions and conduct that follow that status. There is a total failure of consideration shown.

The trial court decreed that title to said premises should be quieted in Mrs. Cunningham, that the plaintiff have no interest therein, and entered a personal judgment against the Cunninghams for the purchase price paid by plaintiff less rents received, and that said judgment should be a lien, prior to any homestead right or exemptions of the defendants. There is no basis for a finding that Mrs. Cunningham should become the purchaser of the property for a money consideration or that the defendants should become indebted to the plaintiff for the purchase price thereof. It is clear that they contemplated that they would become the owners of the property. It is just as clear that they did not expect to pay money for it. That feature of the trial court's decree is erroneous.

This case is before this court for trial *de novo*, subject to the general rule that, "If there is a prayer for general relief, as well as for special relief, the court may extend the relief specially prayed for and give such other relief as the case warants, consistent with the general frame and purpose of the petition." *Hilton v. Clements,* 137 Neb. 791, 291 N. W. 483.

Here the conveyance, while actually from Whitnack to plaintiff and Mrs. Cunningham, was in equity a conveyance to her of the interest of the plaintiff. The consideration moved from plaintiff and the conveyance to Mrs. Cunningham was by his direction. The prevailing general rule is stated by the authorities as follows: "According to many authorities, a grantor who conveys land in consideration of an agreement by the grantee to support, maintain, and care for the grantor during his lifetime, may, upon the neglect or refusal of the grantee to comply with the contract,

have a decree setting aside the deed and reinvesting him with the title to the real estate. The intervention of equity in such cases is sanctioned on the theory that the neglect or refusal of the grantee to comply with his contract raises a presumption that he did not intend to comply with it in the first instance, and that the contract was fraudulent in its inception, wherefore a court of equity will not permit him to enjoy the conveyance so obtained." 9 Am. Jur. 376, sec. 31. The rule is stated in 9 C. J. 1185, as follows: "In the majority of jurisdictions the courts recognize contracts of the character of those under consideration as constituting a class by themselves in matters pertaining to their interpretation and enforcement * * * . The courts of these jurisdictions hold, without qualification, that nonperformance by the grantee of his covenant to furnish support and maintenance to the grantor constitutes sufficient ground for the rescission and cancelation of the conveyance, and the reasons advanced in support of this doctrine conclusively demonstrate its correctness. Furthermore it has been said in a well considered decision: 'Courts are not so much concerned as to the proper theory upon which such contracts may be avoided, as they are that they must be set aside in order to prevent grave injustice and the imposition upon aged people, by unscrupulous persons, who pretend love, devotion, and friendship, where no one of such elements exists.'" See 12 C. J. S. 986, sec. 30.

This court has largely disposed of the questions here presented. In *McIntire v. McIntire*, 75 Neb. 397, 106 N. W. 29, a conveyance was made in consideration of care and a home. Within two months the grantor was "turned out of doors and compelled to seek refuge elsewhere." The conveyance was set aside and the "widow's mite" restored to her. In *Tomsik v. Tomsik*, 78 Neb. 103, 110 N. W. 674, conveyance was made in consideration of support and care of the grantor and his wife. Support was given the plaintiff for almost four years, when defendants "drove him from the premises" and refused further support. The plaintiff was decreed to be the equitable owner of the premises, and accounts arising

as the result of transactions subsequent to the conveyance were adjusted. In *Wilcox v. Wilcox*, 138 Neb. 510, 293 N. W. 378, a mother conveyed property to her son, who later, apparently with the mother's approval, sold it, and with the money purchased other property. About that same time the son made a written statement that "because of indebtedness to my mother" she was to have a home with him so long as she lived. The son later asked his mother to leave the property and attempted to sell it. We there held that a constructive trust was created and that the son would be unjustly enriched if he were permitted to retain the property. In *Copass v. Wilborn*, 139 Neb. 124, 296 N. W. 565, an action was brought to set aside the conveyance of real and personal property on the ground of fraudulent representations and lack of consideration. Plaintiff prayed for equitable relief. Conveyances of real estate were made by plaintiff and his wife to defendant, reserving a life estate. Similar conveyances were made of personal property, including rents. The grantee was a niece of the wife who was brought into the home to care for plaintiff and his wife. Disagreements arose following the conveyances, that, in the language of this court, "taken separately, were not of a very serious nature, but * * * is * * * evidence of a situation that would make it practically impossible for plaintiff to return to his home and receive the fruits of this oral agreement. In transactions, such as exist here, an element of confidence is reposed by the old people in the grantee, sacred in its nature, a breach of and retention of the benefits of which no court should tolerate by a refinement upon technical rules and principles of law. * * * To state that the foregoing acts of defendant, as testified to and complained of by the plaintiff, were trivial and insignificant in their nature and that she has not refused to conform to or perform the obligations of the oral contract would be to place a too-narrow construction on the contract, in that such a construction ignores a most important element of a contract of this kind, viz., that the plaintiffs were to receive the affectionate care that they fully believed the defendant could and would give

to them. Defendant was bound, under the circumstances, to have anticipated the idiosyncrasies of old age." The trial court had sustained a demurrer to plaintiff's evidence. That judgment was reversed.

Title to the premises involved in this action is of right exclusively in the plaintiff. Title being in the plaintiff, he is entitled to the possession thereof, as against the defendants or either of them. This court has long followed the rule that, in a case in equity, "Where the right to the possession of the real estate involved depends upon principles of equity that must necessarily be determined by the court, it is the duty of the court to determine all the issues including the right of possession." *Albin v. Parmele*, 70 Neb. 746, 99 N. W. 646.

The trial court in its decree of July 11, 1941, found "that the rental value of said premises equals the improvements placed thereon." Neither the plaintiff nor the defendants complain of that finding, and it accordingly will not be disturbed. The rental value of the property is fixed by the evidence in this case at from $30 to $35 a month. The property was rented prior to March 1, 1940, at $30 a month. Plaintiff shall have judgment against the defendants for the rental value of the premises at the rate of $30 a month from and after July 11, 1941.

The decree of the district court is reversed and the cause remanded, with directions to enter a decree, in accord with this opinion, quieting title to said premises in the plaintiff and denying the defendants any right, title or interest therein or right of possession thereto, placing the plaintiff in possession of the premises and awarding plaintiff judgment for rents as herein provided. All costs are to be taxed to the defendants.

REVERSED.