ANNA M. LEWELLING, APPELLEE, v. IDA M. McELROY ET AL., APPELLANTS.
27 N. W. 2d 268

Filed May 2, 1947.   No. 32190.

Joseph Ach and Alfred A. Fiedler, for appellants.

John E. Mekota, for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESS-MORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

This is an action to cancel a deed to real estate on the ground that the consideration therefor was a promise to care for the grantor during her lifetime. The grantee died before the grantor. The trial court canceled the deed on condition. We affirm the judgment of the trial court.

The grantor brought this action. She died during its pendency but after she had testified. The action was revived in the name of the executor of her estate, and her nephew Bertwell and his wife. For that reason the original plaintiff will be referred to herein as the grantor. The grantee in the deed will be referred to as the grantee. The defendant Ida M. McElroy, the grantee's widow, will be referred to herein as the widow.

The grantor pleaded that the grantee and his wife promised that if grantor would convey the property to them, they would remain in the home and care for her as long as she lived, and that, relying on the promise and without any other consideration, she made the conveyance; and that they had not cared for her since the execution of the deed. She further alleged that the promise was made without any intention of complying therewith. The defendants deny the promise and necessarily the intent not to perform.

The property involved in this action is a tract of land of about six acres, improved by a house and outbuildings, and located at the outskirts of Western, Nebraska. It had been the home of the grantor for half a century. The grantor had been a widow for many years. She was 86 years of age when the deed was given. The grantor received a pension as a soldier's widow. She was thrifty and lived within her income. In 1926, she bought and thereafter rented another property of a value of about $1,500 or $2,000 in Western.

The grantee was a favored nephew of grantor, and not in good health. On June 16, 1943, he and his wife moved from Omaha to Western and lived with the grantor. The grantee secured employment at Western. On July 21, 1943, the grantor and the grantee went to a notary public in Western and the deed in question was executed and delivered. It was a deed of general warranty, reciting a consideration of $1,000. It was delivered on the date of its execution, and was filed for record and recorded on July 28, 1943. It bore revenue stamps canceled as of that date.

The grantor, the grantee, and his wife lived in the premises until November 24, 1943, when the grantee died. A week later the widow moved from the premises to Omaha, and did not thereafter live there. In February 1944, the widow leased the premises. On February 25, 1944, the widow wrote the grantor asking for possession by April 1, 1944. This lease later was surrendered when the grantor refused to vacate the premises.

The notary testified that he made out the deed at the request of the grantor, and delivered the deed to the grantee at the grantor's direction and in her presence. The grantor directed that the consideration be recited as $1,000. The notary testified that to the best of his knowledge no consideration ever was paid. There is some testimony that about that time the grantor paid a judgment of less than $1,000 to the notary, but that the consideration recited in the deed had nothing to do with the judgment. The widow, called as a witness by the plaintiff, testified that the grantor was offered $1 for the deed and refused it, and that so far as she knew neither she nor the grantee paid anything to the grantor. The grantor testified that she was not paid a cent for the property. Defendants moved to strike this testimony as improper under section 25-1202, R. S. 1943. The motion to strike was overruled. Defendants assign this as error. We need not determine this question. There is ample evidence that there was no money consideration.

Defendants plead that the conveyance was a gift. If error, it was error without prejudice.

What, if anything, was the consideration for the deed?

The grantor offered the testimony of three witnesses. The first was a neighbor woman and a friend of the grantor, who had lived nearby since 1941. She testified that shortly after the deed was delivered the grantee told her of it, and that he was supposed to take care of the grantor for the rest of her life. About the same time the grantor told the witness "they was supposed to take care of her." A doctor, who was the grantee's physician, testified that in September 1943, the grantee told him, "I have taken over Aunt Anna's property and I am to take care of her so long as she lives"; and that on the evening before the grantee died, when the grantee thought he was going to die, the grantee again made that statement to the doctor. The grantee's employer at Western testified that he took the grantee to Wilber to record the deed, and that on the trip over the grantee told the witness that "Aunt Anna had given the deed for taking care of her the rest of her life."

The grantor testified that when the deed was drawn, she asked that it be drawn so that "if I die he can have that property," and that the notary refused so to draw the deed. This the notary, as a witness for defendants, denied, but testified that a day or so after the deed was delivered he went to grantor and asked her if she did not want a reservation in the deed, and was told "no" and made some such a statement as "Guy is good to me" or "Guy will take care of me all right."

The widow testified that she knew nothing of the transaction. The doctor testified that after the grantee's death, the widow came to his office to pay the doctor bill and that during the conversation she told him that they (meaning herself and her husband) were to take care of the grantor so long as she lived; and that she was going back to Omaha and would come back down if needed. He advised her that she should turn the property back

to the grantor and he "thought" from the conversation that she was going to do that. The widow testified that she did not have a conversation to that "extent"; that she told the doctor she was going back to Omaha; that he asked, "aren't you going to stay with her—with us?" that she answered "No"; that he asked, "Are you going to give back the property to Mrs. Lewelling then?" and she said, "She doesn't want it; I have offered it to her and she doesn't want it." The widow further testified as to the following conversation with the grantor after the grantee's death: "I said to her, 'I suppose you are sorry that you gave Guy the property since things have turned out like they have.' And she said, 'No; you are a young woman and can work and take care of it, and I am an old woman, and', she says, 'I want you and Natalie to have the property.' "

The daughter Natalie testified that she heard the grantor make the statement, "I would just as soon you and Natalie would have the place." It is to be noted that these statements were made after the funeral and while the widow was still living in the home at Western.

There also is evidence that while the grantee was living, the grantor contemplated moving into her other house and had asked her tenant to vacate on April 1 following. She refused to state her reasons for the proposed move.

The widow thereafter leased the property and notified the grantor that she expected the premises to be vacant by April 1. The grantor testified that the widow came to the house and the grantor told her, "I want my property back" and that the widow told her that "if it isn't probated I will give it back." This statement the widow denied.

We are convinced, as was the trial court, that the promise was made by the grantee; that the widow knew of it; and that it was the sole and only consideration for the deed.

During the life of the grantee the three people lived

together in the home, the women doing the housework together. Some of the bills for running expenses were paid by each. During this period of time the grantor was taking pills for a heart ailment, but was not ill enough to need a doctor and was never down in bed. After the death of the grantee, and after the widow removed to Omaha, the grantor's health failed; she required and employed the neighbor lady to do her housework and care for her, and later required attendance both day and night at her home, which she secured and for which she paid.

Was there a failure of the consideration? What did the grantor contract to receive and the grantee to furnish?

The grantor had a home, a rental property, and her pension. These obviously were sufficient to furnish food and clothing and shelter. Just as obviously, she contracted to receive that attention and care that an old lady desired over and above physical wants. The care was to continue during the lifetime of the grantor. That she did not receive. There is no evidence that the grantee furnished it during his lifetime. The widow and defendants, who seek to retain the benefit of the transaction, failed to furnish it after the grantee's death.

As we view these facts, they result in a failure to perform the consideration for the deed.

We have repeatedly held that where a grantor conveys land in consideration of an agreement of the grantee to support, maintain, and care for the grantor during his lifetime, and the grantee neglects or refuses to comply with the contract, the deed may be set aside and the title quieted in the grantor. See McIntire v. McIntire, 75 Neb. 397, 106 N. W. 29; Tomsik v. Tomsik, 78 Neb. 103, 110 N. W. 674; McCoy v. Cunningham, 141 Neb. 708, 4 N. W. 2d 835. See, also, Wilcox v. Wilcox, 138 Neb. 510, 293 N. W. 378; Copass v. Wilborn, 139 Neb. 124, 296 N. W. 565.

Does the death of the grantee, under the circumstances

here existing, prevent the granting of equitable relief to the grantor? The subject is discussed in 12 C. J., S., Cancellation of Instruments, section 30, page 989, 26 C. J. S., Deeds, section 21, page 198; 9 Am. Jur., Cancellation of Instruments, section 31, page 376; Annotation, 34 A. L. R. 136. The promise here was personal. While the death of the grantee would not constitute a willful violation of the promise, it nevertheless resulted in a failure to perform the promise and a failure of the consideration so far as the grantor was concerned, for which an equity court should grant relief. Under the circumstances here the setting aside of the deed on the conditions made was equitable, just, and proper.

At the close of the trial in December 1945, both parties rested and submitted their cause. In March 1946, the death of the grantor was suggested and the revivor stipulated and ordered. In April 1946, by amended motion, supported by affidavits, defendants sought permission to withdraw their rest to introduce new and additional evidence they did not know about at the time of the trial. Permission was granted. The hearing was had. Defendants offered the testimony of one witness named in the motion, who testified as to conversations had with the grantor in January and March 1944, regarding her claimed interest in the property. On cross-examination it was disclosed that he had advised the widow of these conversations about the time they occurred. The trial court sustained a motion to strike made on the grounds that the evidence was known to the widow at the time of the trial and during the lifetime of the grantor; and that it would be improper to admit it at this stage of the proceedings.

Defendants then offered the testimony of the other witness named in the affidavit. Her affidavit disclosed that the conversation about which she proposed to testify took place between the grantor and the widow in 1944, so that obviously it was known to the defendant at the time of the trial. The trial court refused to admit

the proffered testimony. Defendants assign the refusal to admit and consider this evidence as error.

A recognized authority states: "As a general rule, after final hearing on the merits, leave will not be granted to either party to adduce evidence of any fact which existed prior to the closing of proofs, and was known or should have been known to the party or his counsel seeking the introduction of such additional evidence. This rule is, however, subject to exceptions, where the reason of the rule does not apply. There is no universal and absolute rule which prohibits the court from allowing the introduction of newly discovered evidence to facts in issue in the cause, after publication and knowledge of the former testimony, and even after the hearing. However, the allowance of it is not a matter of right in the party but of sound discretion in the court, to be exercised cautiously and sparingly, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause. Likewise, admission of testimony taken, which is beyond the scope of the permission granted to take additional testimony, is discretionary." 30 C. J. S., Equity, § 489, p. 885. Under the circumstances existing here, an abuse of discretion is not shown.

At the trial it was established that the grantee and his wife had built a chicken house on the premises and repaired a roof at a value of $150, and that the widow had paid taxes on the premises in the sum of $115.23. The trial court conditioned the cancellation of the deed upon the payment of these items. The correctness of that action is not questioned here.

The judgment of the trial court is affirmed.

AFFIRMED.