89 So.2d 6 (1956)
Leo L. COOK and Lillian M. Cook, his wife, Appellants,
v.
Cora B. ADAMS (R. Lee Freeman, as Executor of the Estate of Cora B. Adams, by substitution), Appellee.
Supreme Court of Florida. Special Division A.
July 25, 1956.
J.U. Gillespie, New Smyrna Beach, for appellants.
Alfred E. Hawkins, Daytona Beach, for appellee.
TERRELL, Justice.
March 8, 1950, Cora B. Adams executed and delivered to Leo L. Cook and Lillian M. Cook, his wife, a special warranty deed, covering the following described property at New Smyrna Beach:
Lot 8, Block 2, of the H.C. Longstreet Sub. of Block 1, of the Alden Subdivision, of the Walker Grant, as per map in Map Book 4, page 160, of the Public Records of Volusia County, Florida,
with the following reservations and considerations:
"Reserving in said property to the party of the first part a life estate; it is the intention of the party of the first part to reserve unto herself during the full term of her natural life the right of possession and occupancy in and to the said real estate * * *, and to convey unto the parties of the second part herein the full fee title * * *. And in further consideration of this conveyance the parties of the second part [defendants] shall provide for the party of the first part [plaintiff] a home in the residence on said described premises during her lifetime and shall support and maintain her in a comfortable manner suitable to her *7 station in life and as her needs may designate. The parties of the second part hereby assume and agree to pay all taxes and assessments that may now be due or become due subsequent to the date of this deed. * * *"
Soon after the deed was executed the Cooks returned to their home in Indiana and did not return to New Smyrna Beach until November, 1950. In the meantime, Mrs. Adams made improvements on the place and advised the Cooks that she was not satisfied with the treatment she was getting from them. They indicated a willingness to quitclaim the property to her and a deed was prepared for that purpose but was not delivered.
February 16, 1951, Mrs. Adams instituted this suit to cancel said deed for fraud. She alleged its execution, the purpose for which it was executed and that defendants had not complied with their part of the agreement, nor did they ever intend to do so. A motion to strike certain portions of the complaint and a motion to dismiss were denied. An amended answer was filed, a special master was appointed, testimony was taken, a portion of which was in the form of de bene esse depositions. At final hearing the chancellor found the equities to favor the plaintiff, that the deed to defendants was secured by fraud without any purpose to comply with its terms; that it was null and void and that defendants were enjoined from claiming any right, title or interest in and to the property. Costs were taxed against the defendants and the plaintiff was required to pay them any sums they had paid for taxes and insurance on the property in litigation. This appeal is from the final decree so entered.
The point for determination is whether or not there was error in the final decree as thus entered.
The answer to this question turns on whether or not the evidence shows that defendants provided the plaintiff "a home in the residence on said described premises during her [appellee's] lifetime and shall support and maintain her in a comfortable manner suitable to her station in life and as her needs may designate," in keeping with the agreement between them as specified in the deed herein referred to.
It appears from the record that said deed was executed March 8, 1950; that the plaintiff was past 75 years of age at the time; that she had been ill for some time; that she was feeble at the time and was a patient at Sunny South Hospital, New Smyrna Beach, when this suit was instituted February 16, 1951. She died in said hospital March 5, 1951, and R.L. Freeman, appellee, was appointed executor of her estate. From the date of the deed to her death was three days short of a year. The most of this time, a few days after the deed was executed to November of the same year, appellants were in Indiana and contributed nothing to plaintiff's support during this time or up to the time of her death but some chewing gum, cookies, some old dresses, an apron or two and a few other items of like value.
Shall provide "a home in the residence on said described premises during her lifetime and shall support and maintain her in a comfortable manner suitable to her station in life and as her needs designate," contemplates more than a few wads of chewing gum and some tag ends of "hand-me-downs." When one the age of appellee, or even younger, deeds to another their valuables for a "home" and support as long as they shall live, it is not satisfied by distant or silent treatment. It contemplates that which is symbolized in the old song, "Home Sweet Home"; it means more than a shelter from the elements; it means more than bread and butter, medicine, doctors' and nurses' care; it contemplates those intangible relationships, such as comfort, a right attitude, wholesome relationships; it may contemplate forbearance, an effort to please, the exercise of patience, and good fellowship not punctured too often with the barking *8 of pet dogs or the romping of rude youngsters.
Appellants admit the making of the deed for the purposes stated; that they went to Indiana soon after it was executed where they remained several months but they say appellee had ample means to provide her needs while they were gone and that they provided persons to prepare her meals and look after her while they were away in the person of Mr. McRae and Mrs. Creagh. Mr. McRae testified, however, that Mrs. Adams invited him to come and stay in the home at night and that he paid her no lodging. There is evidence to the effect that in November of 1950 Mrs. Adams executed a will leaving her property to Mr. McRae but all of this is beside the question since the gist of the agreement between appellants and appellee was to provide appellee "a home," and "support" for the balance of her "life" as her needs may designate and there is a dearth of showing that this was done. The chancellor so found and the evidence is ample to support his finding. The cases of Collins v. McKelvain, 138 Fla. 463, 189 So. 655; Thomas v. Vickers, 143 Fla. 54, 196 So. 602; Anders v. Anders, 143 Fla. 721, 197 So. 451, and many others support this conclusion.
This case is typical of many in which those of advanced years pledge their lands and belongings to others to take care of them for the balance of life and when the burden becomes onerous, the pledgee welches on the bargain. The courts of the country have almost universally adopted the rule that those so wronged may resort to equity, cancel the deed and restore the property to the rightful owner rather than resort to such remedy as they may have by law. Lewis v. Wilcox, 131 Iowa 268, 108 N.W. 536.
It is contended that the trial court committed error in taxing costs to defendants. The rule is too well settled for argument in this state that the chancellor may in the exercise of his discretion decree that the costs shall follow the result of the suit, may apportion the costs between both parties, or may require that all costs shall be paid by the prevailing party. Kooman, Florida Chancery Pleading and Practice, Sec. 166, page 385, Pocket Supplement Sec. 166, page 152. Finding no abuse of discretion as to this, we must decline to disturb the decree on this or any other point. It is in all respects affirmed.
Affirmed.
DREW, C.J., THORNAL, J., and WARREN, Associate Justice, concur.