LUDVINA ALMEIDA, Plaintiff-Appellee, *v.* GEORGE THOMAS ALMEIDA, Defendant-Appellant

NO. 8651

(CIVIL NO. 4951)

SEPTEMBER 9, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY TANAKA, J.

Defendant George Thomas Almeida (George) appeals from the judgment divesting him of his interest in certain real property and vesting it in his joint tenant, plaintiff Ludvina Almeida (Mrs. Almeida). We affirm.

The action involves Lot 12-B, area 12,000 square feet, together with an undivided one-half interest in a roadway lot and two easements (the Property), located in Pukalani, Maui. Mrs. Almeida and her husband, Manuel Almeida (Mr. Almeida), acquired the Property in 1951. By deed dated December 26, 1961, Mr. and Mrs. Almeida conveyed the Property to their son George and his wife Mildred S. Almeida (Mildred). Upon the request of Mrs. Almeida, George and Mildred conveyed the Property to her by deed dated March 12, 1963.

Shortly after Mr. Almeida died in 1964, Mrs. Almeida built a house on the Property where she has since resided. By deed dated March 19, 1965, Mrs. Almeida conveyed the Property to herself and her son Harry Almeida (Harry), as joint tenants. By deed dated February 15, 1968 (1968 Deed), Mrs. Almeida and Harry conveyed the Property to Mrs. Almeida and George, as joint tenants.

On October 22, 1980, Mrs. Almeida filed a complaint alleging, *inter alia,* that (1) she and George agreed that upon his retirement from military service, George would return to Maui, reside with her, and care for her needs for the rest of her life and, in return, she would insure that he would become the

owner of the Property upon her death; (2) she fulfilled her end of the promise by the execution of the 1968 Deed; and (3) George failed and refused to perform his part of the agreement. She sought a decree divesting George of all right, title and interest in the Property.

George counterclaimed alleging joint ownership of the Property and seeking partition.

After a bench trial, the trial court entered its findings of fact and conclusions of law on October 20, 1981 and its judgment on December 9, 1981. The judgment "divested" George of his "right, title and interest" in the Property, "vested" the same in Mrs. Almeida and dismissed George's counterclaim. George appeals.

The issues on appeal are whether the trial court erred (1) in denying George's motion to dismiss for want of an indispensable party, (2) in failing to find that the 1968 Deed effected a gift of a joint interest in the Property to George, (3) in finding an agreement by George to care for Mrs. Almeida, (4) in ruling against George's affirmative defenses of statute of limitations and laches, and (5) in decreeing divestiture of George's interest in the Property. We find no reversible error.

I.

On the morning of September 8, 1981, when the trial commenced, George filed a motion to dismiss the complaint. He contended, *inter alia,* that the complaint should be dismissed because, as a co-grantor in the 1968 Deed, Harry was an indispensable party to the suit. On the same morning, the trial court orally denied the motion.[1]

At the outset, we observe that Rule 19, Hawaii Rules of Civil Procedure (HRCP) (1981),[2] regarding indispensable par-

---

[1] No written order denying the motion to dismiss was filed.

[2] The applicable provisions of Rule 19, Hawaii Rules of Civil Procedure (1981), provide:

(a) Persons to be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest

ties "is founded on equitable considerations, and is not jurisdictional." *Midkiff v. Kobayashi,* 54 Haw. 299, 324, 507 P.2d 724, 739 (1973). Even if an absentee is deemed needed for the just adjudication of a claim, a decision to dismiss must be based on the pragmatic "equity and good conscience" test of Rule 19(b), HRCP. Therefore, after the conclusion of a trial on the merits, there is reluctance on the part of an appellate court to overturn the trial court's decision as to indispensable parties, unless there is real prejudice to the absentee. 7 C. Wright & A. Miller, Federal Practice and Procedure: *Civil* § 1609 (1972).

We are aware of the pronouncement of our supreme court that the "[a]bsence of indispensable parties can be raised at any time even by a reviewing court on its own motion." *Haiku Plantations Ass'n v. Lono,* 56 Haw. 96, 103, 529 P.2d 1, 5 (1974) (quoting *Filipino Federation of America v. Cubico,* 46 Haw. 353, 369, 380 P.2d 488, 497 (1963)).

We are also cognizant of the fact that Rule 19, HRCP, was amended in 1972 to conform to Rule 19, Federal Rules of Civil Procedure, as revised in 1966. The Advisory Committee on the Federal Rules of Civil Procedure, in its Note on the 1966 Revision of Rule 19, quoted at 3A J. Moore & J. Lucas, Federal Practice ¶ 19.01 [5.-4] (2d ed. 1982), comments as follows:

---

relating to the subject of the action and is so situated that the disposition of the action in his absence may (A) as a practical matter impair or impede his ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) (1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

[W]hen the moving party is seeking dismissal in order to protect himself against a later suit by the absent person . . . , and is not seeking vacariously [sic] to protect the absent person against a prejudicial judgment . . . , his undue delay in making the motion can properly be counted against him as a reason for denying the motion.

In *National Board of YWCA v. YWCA of Charleston, S.C.,* 335 F. Supp. 615 (D. S.C. 1971), defendant moved to dismiss the complaint on the ground that plaintiff failed to join an indispensable party. The court held that "defendant's delay in making its motion until the very morning of trial would warrant its denial because of laches." *Id.* at 627.

George's primary complaint is that the absence of Harry may subject George to "multiple suits and result in inconsistent judicial decisions imposing undue hardship" on him. Reply Brief at 5. Applying the above principles, we believe that it was fatal for George to have waited to file his motion until the day of trial when Mrs. Almeida was in court ready to proceed. Furthermore, it appeared unlikely that Harry would be adversely affected in a practical sense. A decision on the merits would not have been binding on him.

Consequently, we hold that the trial court's denial of George's motion to dismiss was not reversible error.

## II.

"A 'gift' is generally defined as a voluntary transfer of property by one person to another without any consideration or compensation therefor." *Welton v. Gallagher,* 2 Haw. App. 242, 245, 630 P.2d 1077, 1081 (1982), *aff'd,* 65 Haw. 528, 654 P.2d 1349 (1982). To constitute a gift, the essential elements are (1) donative intent, (2) delivery, and (3) acceptance. *Estate of Lalakea,* 26 Haw. 243 (1922); 38 Am. Jur. 2d *Gifts* §§ 17, 20, 34 (1968).

There is no dispute as to delivery and acceptance of the 1968 Deed in this case. The bone of contention is the element of donative intent.

Generally, the burden of proving an alleged gift is on the donee. *Siko v. Seguirant,* 51 Haw. 118, 452 P.2d 447 (1969); *Welton v. Gallagher, supra.* However, in cases of close kinship,

there is a presumption that a gift was intended and the presumption must be rebutted by clear and convincing evidence. *Ables v. Ables,* 39 Haw. 598 (1952); *Welton v. Gallagher,* 2 Haw. App. at 245 n.1, 630 P.2d at 1081.

Claiming that Mrs. Almeida failed by clear and convincing evidence to rebut the presumption that the 1968 Deed conveying a joint interest in the Property to him was a gift, George contends that the trial court erred in not finding a gift. On the other hand, Mrs. Almeida argues that the evidence was clear and convincing that the conveyance was in consideration of George's agreement to care for her after his retirement from military service; therefore, no gift was intended or involved.

Clear and convincing evidence means such evidence as will produce "in the mind of a reasonable person a firm belief as to the facts sought to be established." *Welton v. Gallagher,* 2 Haw. App. at 246, 630 P.2d at 1081. We do not believe that conflicting evidence *per se* precludes it from being clear and convincing. The trier of fact must resolve "the conflicting evidence based on the credibility of the witnesses and the weight of the evidence." *Anders v. State,* 60 Haw. 381, 392, 590 P.2d 564, 570 (1979). *See also MPM Hawaiian, Inc. v. Amigos, Inc.,* 63 Haw. 485, 630 P.2d 1075 (1981); *Shinn v. Edwin Yee, Ltd.,* 57 Haw. 215, 553 P.2d 733 (1976); *Siko v. Seguirant, supra.*

George argues that because the 1968 Deed contained no covenant or condition of his promise to care for Mrs. Almeida, the evidence is not clear and convincing that there was no donative intent. The court below found that in consideration of the conveyance George promised Mrs. Almeida "that upon his retirement from the military service he would care for [her] needs for the remainder of her natural life." Finding of Fact No. 8. Mrs. Almeida, who was 78 years of age at the time of trial, testified unequivocally that George so promised. Her son Albert Almeida (Albert) testified that after 1968 George confirmed his promise to Mrs. Almeida to take care of her. George's testimony was that he made no such promise to his mother.

We hold that (1) the trier of fact, the trial court in this case, resolved the conflicting evidence by finding the testimony of Mrs. Almeida and Albert to be credible and (2) as so resolved,

the evidence could reasonably produce in its mind a firm belief that George did make the promise in contention to Mrs. Almeida, and no gift was intended.

### III.

George asserts that the trial court erred in finding and concluding that there was a "contract" enforceable by Mrs. Almeida. He argues that his alleged promise to "care for" Mrs. Almeida lacked reasonable certainty. We disagree.

Restatement (Second) of Contracts § 33 (1981) provides in relevant part:

> (1) Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.

> (2) The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy.

*See Francone v. McClay,* 41 Haw. 72 (1955); *Clarkin v. Reimann,* 2 Haw. App. 618, 638 P.2d 857 (1981).

We have announced the policy that "the law leans against the destruction of contracts for uncertainty" and that "[c]ourts favor the determination that an agreement is sufficiently definite." *In re Sing Chong Co., Ltd.,* 1 Haw. App. 236, 239, 617 P.2d 578, 581 (1980).

Professor Corbin states that an agreement "to support a person is not too indefinite" because a "court or jury can determine in each case what performance is reasonably necessary for support." 1 A. Corbin, *Corbin on Contracts* § 100, n.56 (1963). An agreement to "care for" the grantor in a deed is broad enough to mean an obligation to provide support to him. *Walton v. Walton,* 113 Ga. App. 400, 148 S.E.2d 331 (1966). A written agreement in the deed to provide "adequate care and maintenance of [the grantor] during the remainder of [her] lifetime" was not questioned as lacking reasonable certainty to preclude enforceability in *Anderson v. Anderson,* 620 S.W.2d 815, 817 (Tex. App. 1981). *See also Fisher v. Sellers,* 214 Ark. 635, 217 S.W.2d 331 (1949); *Cook v. Adams,* 89 So.2d 6 (Fla. 1956).

Our supreme court has stated that "an undertaking and promise of the grantee to provide for the grantors a comfortable and suitable support and maintenance during the remainder of their respective lives," together with love and affection and one dollar, constitute good and sufficient consideration. *In re Kealiiahonui,* 9 Haw. 1, 7 (1893). George's promise to "care for" Mrs. Almeida was equivalent to a promise to support her.

Thus, there was reasonable certainty and the trial court did not err in finding and concluding that George's promise to "care for" Mrs. Almeida constituted an enforceable agreement.

IV.

George claims that under the facts of the case, he should have prevailed on his affirmative defense of statute of limitations or laches. He argues that (1) his alleged agreement to care for Mrs. Almeida was made at or about the time of the execution of the 1968 Deed; (2) in 1970, Mrs. Almeida sought to have him convey his interest in the Property to her which he refused to do; (3) Mrs. Almeida filed her complaint on October 22, 1980; (4) she "had knowledge of the facts and circumstances to bring her claim" in 1970 (Opening Brief at 27); and (4) thus, her action commenced in 1980 was too late. George's claim is without merit.

Mrs. Almeida's claim was based on a breach of an agreement. Generally, the statute of limitations does not begin to run on a contract until it is breached. *See Au v. Au,* 63 Haw. 210, 626 P.2d 173 (1981). Furthermore, in the absence of a repudiation, the limitations period does not begin to run until the agreement is to be performed. 51 Am. Jur. 2d *Limitation of Action* § 126 (1970).

Here, George's promise was to take care of Mrs. Almeida after his retirement from military service. He retired in September 1980, although he had returned to Maui earlier in July 1980. His breach of the agreement occurred in September 1980 after his retirement. Furthermore, the record is devoid of any evidence that his refusal to reconvey his interest to Mrs. Almeida in 1970 was an anticipatory breach of his promise. The instant law suit was commenced in October 1980, only a

short time after the six-year limitations period of HRS § 657-1 (1976 & Supp. 1982) began running.

Mrs. Almeida's quest for equitable relief subjects her to the defense of laches. The laches doctrine is based on the maxim that "equity aids the vigilant, not those who slumber on their rights." *Adair v. Hustace,* 64 Haw. 314, 320, 640 P.2d 294, 300 (1982) (quoting 2 S. Symons, *Pomeroy's Equity Jurisprudence* § 418 (5th ed. 1941)). Although "[a] court of equity is not bound by the statute of limitations, . . . in the absence of extraordinary circumstances, it will usually grant or withhold relief in analogy to the statute of limitations relating to law actions of like character." *Yokochi v. Yoshimoto,* 44 Haw. 297, 300, 353 P.2d 820, 823 (1960).

Mrs. Almeida commenced her action about a month after the analogous six-year limitations period began running. Since George has failed to show any extraordinary circumstance in the case, the doctrine of laches does not apply.

V.

Finally, George contends that the conclusion of law and judgment of the trial court divesting the joint interest of George in the Property and vesting it in Mrs. Almeida were erroneous for three reasons. First, since the 1968 Deed was absolute and unconditional, George's oral promise was a covenant rather than a condition subsequent, so the proper remedy was the award of damages and not divestiture. Second, inasmuch as Harry was a co-grantor in the 1968 Deed, the trial court could not vest in Mrs. Almeida the interest George acquired from Harry. Third, since the trial court concluded, in the alternative, that the parties may remain as joint tenants of the Property provided that (1) Mrs. Almeida shall have the beneficial use thereof until her death and (2) George shall pay her $250 per month commencing September 1, 1980 (Conclusion of Law No. 7), there was an adequate remedy at law. We do not agree.

A.

Citing *State v. Thom,* 58 Haw. 8, 563 P.2d 982 (1977), George contends that the 1968 Deed must be construed in

accordance with the intention of the parties, as ascertained from the language of the deed. The 1968 Deed recites a consideration of one dollar and love and affection and conveys the Property to Mrs. Almeida and George, as joint tenants, absolutely and unconditionally. Therefore, George argues that his oral promise to support Mrs. Almeida is not a condition of conveyance but a covenant. For a breach of such covenant, Mrs. Almeida is entitled only to a money judgment.

*State v. Thom, supra,* sets forth the general law regarding deeds of conveyance. However, the judicial treatment of deeds in consideration of support is unique and may be summarized as follows:

> Where a deed depends for its consideration upon a promise of support the courts have shown a great deal of leniency toward the grantor. Relief is granted in a variety of ways when the grantee does not fulfil his promise. The deed is sometimes treated as voidable at the option of the grantor, or the deed may be set aside for lack of consideration or the deed treated as conveying a fee upon a condition subsequent.

6 G. Thompson, *Real Property* § 3117, at 906-07 (1962). *See also* 26 C.J.S. *Deeds* § 21 (1956); 73 Am. Jur. 2d *Support of Persons* §§ 26, 36, 40 (1974).

Courts have evinced their concern in this area and acted to grant equitable relief "particularly where the grantor is of advanced years." 26 C.J.S., *supra,* at 620. Upon the grantee's breach, courts have cancelled or voided a deed even where the promise to support was not specified in the deed itself but appeared in a separate writing, *Shook v. Bergstrasser,* 356 Pa. 167, 51 A.2d 681 (1947), or was orally made by the grantee. *Lewelling v. McElroy,* 148 Neb. 309, 27 N.W.2d 268 (1947); *Frasher v. Frasher,* 249 S.E.2d 513 (W. Va. 1978); *Nadler v. Nadler,* 242 Wis. 537, 8 N.W.2d 306 (1943).

Where the promise to support is deemed to be a condition subsequent, the courts have decreed rescission and cancellation or reconveyance upon breach of the promise. *Nadler v. Nadler, supra; Glocke v. Glocke,* 113 Wis. 303, 89 N.W. 118 (1902). However, the absence of a condition subsequent has not precluded a court from decreeing rescission and cancellation or other equitable remedies. Finding failure of considera-

tion upon the grantee's breach, courts have cancelled the deed and restored the property to the grantor. *Cook v. Adams, supra; Lewelling v. McElroy, supra; Shook v. Bergstrasser, supra; Johnson v. Kiser,* 216 Va. 794, 223 S.E.2d 871 (1976); *Frasher v. Frasher, supra.* In some cases, the courts have utilized the remedy of constructive trust. *Loschen v. Clark,* 127 N.W.2d 600 (Iowa 1964); *Dietz v. Dietz,* 244 Minn. 330, 70 N.W.2d 281 (1955).

Here, Mrs. Almeida, who was of advanced age, had the Property conveyed to herself and George in consideration of George's oral promise to support her. George breached his agreement and Mrs. Almeida wanted the interest conveyed to George to be divested. Even assuming that George's promise to support was not a condition subsequent, there was a failure of consideration and, on the basis of the reported cases, the trial court had the authority and discretion to rescind and cancel the 1968 Deed.

### B.

George then argues that the proper remedy was not the divestment of his interest and the vesting of it in Mrs. Almeida, but rescission and cancellation of the 1968 Deed. Further, since Harry was a co-grantor, but a non-party in the case, even rescission and cancellation would not have been proper. *See* part I, *supra.*

In this case, Mrs. Almeida sought the aid of a court of equity. A "court of equity has plenary power to mold its decrees in such form as to conserve the equities of all parties * * *." *Fleming v. Napili Kai, Ltd.,* 50 Haw. 66, 70, 430 P.2d 316, 319 (1967) (quoting *Baker Sand & Gravel Co. v. Rogers P. & H. Co.,* 228 Ala. 612, 619, 154 So. 591, 597 (1934)). *See Schrader v. Benton,* 2 Haw. App. 564, 635 P.2d 562 (1981). Also, "[t]he relief granted in equity is dictated by the equitable requirements of the situation, and must be adapted to the facts and circumstances of the particular case." *Shinn v. Edwin Yee, Ltd.,* 57 Haw. at 235, 553 P.2d at 746.

In Finding of Fact No. 7 which is unchallenged, the trial court found:

7. On March 19, 1965, Plaintiff conveyed Lot 12-B [the

Property] from herself as sole owner to herself and her son Harry Almeida as joint tenants. This conveyance was undertaken in exchange for the promise of Harry Almeida that he would care for Plaintiff for the remainder of her life, but it was not intended to pass any interest in the property to Harry until Plaintiff's death. Harry Almeida subsequently informed Plaintiff that he was not going to return to Maui.

The consideration for the March 19, 1965 conveyance of a joint interest to Harry was his promise to support Mrs. Almeida. Finding of Fact No. 7 indicates a breach of the promise by Harry since his decision not to return to Maui would make it impractical for him to care for Mrs. Almeida. Thus, Mrs. Almeida had the right to have Harry's interest in the Property restored to her consensually or by judicial action. She did neither. Instead, she caused Harry to convey the Property together with her to herself and George by the 1968 Deed.

Under such circumstances, the trial court could and did mold its decree to divest George's interest in the Property and vest the same in Mrs. Almeida. It was unnecessary to require Harry to join in the law suit, decree the rescission and cancellation of the 1968 Deed and order Harry to convey his interest in the Property to Mrs. Almeida.

C.

In the Findings of Fact and Conclusions of Law filed on October 20, 1981, after concluding that a judgment should be entered divesting George's interest in the Property and vesting the same in Mrs. Almeida, the trial court, in the alternative, concluded that the Property should remain in the names of the parties as joint tenants provided that Mrs. Almeida would have the beneficial interest of the Property during her lifetime and that George would pay Mrs. Almeida $250 per month from September 1, 1981. George asserts that this clearly shows that Mrs. Almeida had an adequate remedy at law and the equitable remedy of divestiture was improper.

At the hearing on George's motion for reconsideration of the judgment and for amendment of findings of fact and con-

clusions of law, the trial judge indicated that he had inserted the alternative conclusion of law for a practical purpose. He stated that Mrs. Almeida was aged and had "passed her life expectancy" and he was giving George "a chance to make up with . . . his mother." Transcript at 141. However, in his affidavit, George indicated that since his monthly net income totaled $1,700 and his monthly expenses approximately $1,615, he would be unable to make a monthly payment of $250 to Mrs. Almeida. Furthermore, Mrs. Almeida rejected the court's alternative conclusion. The court's efforts were in vain.

As indicated in part V-A, *supra,* where there has been a failure of the consideration of support for a deed, the equitable remedy of rescission and cancellation is not uncommon, especially where the grantor is aged. A money judgment award to Mrs. Almeida, who was 78 years old, upon George's representation that he was unable to pay $250 monthly, would have been an inadequate remedy at law. The trial court did not err in ordering divestiture in the judgment.

Affirmed.

*Edward S. Kushi, Jr.* (*Law Offices of Lawrence N.C. Ing,* of counsel; *Crockett & Nakamura,* of counsel) for defendant-appellant.

*Edward F. Mason* (*Mason and Scott,* of counsel) for plaintiff-appellee.